Thomas Alfred TAMBLYN

v.

**UNITED STATES of America.**

No. 14858.

United States Court of Appeals,
Fifth Circuit.

Oct. 29, 1954.

Rehearing Denied Dec. 4, 1954.

H. L. Anderton, Birmingham, Ala., for appellant.

Frank M. Johnson, Jr., U. S. Atty., M. L. Gwaltney, Birmingham, Ala., Fred S. Weaver, Asst. U. S. Attys., Double Spring, Ala., for appellee.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

Appellant was adjudged guilty of willfully failing and refusing to report for induction into the armed forces of the

United States in violation of Section 12 of the Selective Service Act of 1948, as amended, Sec. 462 of Title 50, Appendix, United States Code Annotated, and was sentenced to imprisonment for a period of two years. That the defendant did fail and refuse to report for induction was established without dispute, and was admitted by the defendant as a witness for himself. His defense was that as a regular minister of religion he was exempt from training and service, but not from registration under Sections 6(g) and 16(g)(2) and (3) of the Act, Sections 456(g) and 466(g)(2) and (3) of Title 50, Appendix, United States Code Annotated.[1]

It is now settled that one need not report for induction to be entitled to question the draft board's denial of his claimed exemption from military service in a criminal proceeding against him. Gibson v. United States, 329 U.S. 338, 350, 67 S.Ct. 301, 91 L.Ed. 331; Estep v. United States, 327 U.S. 114, 123, 66 S.Ct. 423, 90 L.Ed. 567. The Selective Service Act gives the draft board power to determine all questions or claims with respect to inclusion for, or exemption or deferment from military training and service, and provides that the decisions of such boards and of the administrative appeal boards, and of the President shall be final.[2]

---

[1]. "§ 456. *Deferments and exemptions from training and service.*
  *    *    *    *    *    *

"(g) Regular or duly ordained ministers of religion, as defined in this title (sections 451–454 and 455–471 of this Appendix), and students preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools, or who are satisfactorily pursuing full-time courses of instruction leading to their entrance into recognized theological or divinity schools in which they have been pre-enrolled, shall be exempt from training and service (but not from registration) under this title (said sections)."

"Section 466. *Definitions*
  *    *    *    *    *    *

"(g) (2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

"(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

[2]. "§ 460. *Selective Service System*—
  *    *    *

"(b) (3) * * * Such local boards, or separate panels thereof each consisting of three or more members, shall, under rules and regulations prescribed by the President, have the power within the respective jurisdictions of such local boards to hear and determine, subject to the right of appeal to the appeal boards herein authorized, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this title (said sections), of all individuals within the jurisdiction of such local boards. The decisions of such local boards shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe. There shall be not less than one appeal board located within the area of each Federal judicial district in the United States and within each Territory and possession of the United States, and such additional separate panels thereof, as may be prescribed by the President. Appeal boards within the Selective Service System shall be composed of civilians who are citizens of the United States and who are not members of the armed forces. The decision of such appeal boards shall be final in cases before them on appeal unless modified or changed by the President. The President, upon appeal or upon his own motion, shall have power to determine all claims or

The Supreme Court has, however, construed the word "final" to permit a very limited scope of judicial review. See Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308; Gibson v. United States, 329 U.S. 338, 67 S.Ct. 301, 91 L.Ed. 331; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152. In the last cited case it was said:

"The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. We have found none here.

"Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. If the facts are disputed the board bears the ultimate responsibility for resolving the conflict—the courts will not interfere. Nor will the courts apply a test of 'substantial evidence'. However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption." Dickinson v. United States, supra, 346 U.S. at page 396, 74 S.Ct. at page 157.

Whether or not there was a basis in fact to support the board's classification is a question for the courts to decide and not a matter to be submitted to the jury. Cox v. United States, 332 U.S. 442, 453, 68 S.Ct. 115, 92 L.Ed. 59. If the district court errs in failing

to examine the files of the board to determine whether or not there was basis for the classification, that error may be cured in the Court of Appeals by that Court's examination. Cox v. United States, supra.

In the present case, the District Court stated: "Let the record show that the Court has been through this Selective Service file and has read the material portions, and considered them." While that Court did not expressly state that it found in the file a basis in fact for the board's classification, we have carefully re-examined the file here and are left in no doubt that there was such basis. The appellant first registered on November 1, 1949, answering questions as follows: "7. Occupation—Musician; 8. Firm or individual by whom employed—Self employed; 9. Nature of business, service rendered, or chief product—Teaching music & tuning instruments." In December, 1950, he claimed exemption stating that he had completed 6 years of elementary school, 2 years of junior high school and 1 year of high school, and had been a "theological student under church direction since I graduated from junior high school". He further claimed that he was then working as "Pastor-Evangelist—Directing Vesper Service and Youth Department", and "(On trial as theological student from August, 1949)". On December 14, 1950, registrant wrote a letter in support of his claim for exemption saying in part:

"Further (sic), Mrs. D. K. Price, who happens to be a sister-in-law to Mr. Van Jones (who I believe is on the Board) will also be glad to testify and to assert that she has known me from birth and that I have been training for this Gospel Ministry since I left common school and she has taken the Greek work in class, as a matter of fact, with me: as connected with my theological studies."

questions with respect to inclusion for, or exemption or deferment from training and service under this title (said sec-

tions), and the determination of the President shall be final. * * *"

A later communication from the Local Board to the State Appeal Board recites:

"On December 19, 1950, Board Member Jones was called by Mrs. D. K. Price by telephone and was informed that Thomas A. Tamblyn was not a pastor of Lakeside Church, but had been called to preach or pastor said church. She further stated that Thomas' religious activities at that time (and is true today) was teaching of a youth Sunday School Class on Sunday afternoons. The Board would like to point out at this point that this work now being done by Thomas A. Tamblyn, is no more than the work of an ordinary Christian or Sunday School teacher."

On December 19, 1950, the local board classified the registrant as 1–A. On December 26, 1950, the registrant appealed and at the same time filed a letter "From the Church Council", signed by seventeen members of the church, stating in part:

"We, the undersigned, do further declare that Thomas Alfred Tamblyn has been in training in accord with our particular faith and under the direction of our church teaching as a student of theology, since he graduated from secular school some *four years ago*, of a standard equal to any theological seminary of any denomination: and this with the express purpose in view of engaging in the regular pastoral-evangelism branch of our work to which we introduced him on trial about a year ago and to which we appointed him, in accord with the regular practice of our church, last September (with a regular income for full-time work separated entirely from any secular employment) as acceptable to us in that capacity of pastor-evangelist. In such occupation and capacity he is, to our church, unquestionably a 'regular minister' of the gospel."

In January, 1951, the registrant requested a personal appearance before the board with "at least two official representatives of my church". The board replied: "You may appear before this Board Tuesday, January 17, 1951 at 2:00 o'clock, but representatives of your Church are not permitted to appear. However, representatives of your Church may file affidavits sworn to before someone authorized to administer oath in regard to your change of classification." Registrant then declined to appear or to file any affidavits. On January 30, 1951, there was filed with the board a statement as follows:

"I was talking to Thomas Tambyln (sic) concerning his being drafted. I asked him when he was leaving. He said he would not be going. I asked why? He said he was preaching. I asked him when was his next sermon, that I wanted to hear him. He said he was studying under his father who is pastor of the Lakeside Church, but when he began preaching I could hear his first sermon.

"Sincerely,

"/signed/ Andrew Kirby, Jr."

In March, 1951, the registrant was ordered to report for physical examination and was found acceptable for induction into the Armed Services. His record was forwarded to the Appeal Board which reviewed his file and determined on May 9, 1951, that he should not be classified as exempt. The applicant had also claimed exemption as a conscientious objector, though that claim was not insisted on in the District Court nor in this Court. Pursuant to the requirements of the statute as to conscientious objectors, United States Code Annotated, Title 50, Appendix, Section 456(j), see United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417, the Appeal Board referred such claim to the Department of Justice for inquiry and hearing. Judge Hugh A. Locke, the Hearing Officer, reported in part:

"The gist of this entire examination was that the registrant insisted that when an occasion for resistance to force arose, he would not prophesy

or say what he would do, but that he would do what he thought was right. Whether this was bad or not would be determined by him, in keeping with his conscience at that time."

The Department of Justice on June 9, 1952, recommended "that the registrant be not classified as a conscientious objector". On July 31, 1952, the Appeal Board unanimously classified the registrant as 1-A. On August 7, 1952, he was ordered to report for induction on September 4, 1952, but on August 15, 1952, his.induction was postponed by the State Director, and the file was then forwarded to the National Selective Service Appeal Board in Washington for final decision. That Board on September 22, 1952, by unanimous vote determined the registrant's proper classification to be Class 1-A. On October 7, 1952, he was ordered to report for induction on October 22, 1952. On October 20, 1952, his attorney wrote the Local Board a letter still insisting on the registrant's claim of exemption as a minister of religion, and on the same day the registrant informed the clerk of the board that he would not report for induction. He did not report. His indictment and conviction followed.

The defendant also claimed in the District Court that the Board's order was unlawful because it acted arbitrarily and capriciously. Some cases have held that a factual issue for the jury's determination may arise as to whether the board exceeded its jurisdiction by acting arbitrarily or capriciously. Imboden v. United States, 6 Cir., 194 F.2d 508, 512; Niznik v. United States, 6 Cir., 173 F.2d 328; Id., 184 F.2d 972; Goff v. United States, 4 Cir., 135 F.2d 610, 612; cf. Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567; United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417; Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152; Roberson v. United States, 10 Cir., 208 F.2d 166, 167.

The District Court pursued the safe course and submitted to the jury the question of whether the local board acted capriciously and arbitrarily, and the jury returned a verdict finding the defendant guilty.

██ The only witness offered for the Government in the District Court was the clerk of the local board, who identified the defendant's selective service file and that was introduced into evidence. The defendant complains that the Court sustained objection to several questions asked this witness by defendant's counsel on cross-examination.

"Q. Have you ever heard him (Mr. Van Jones, a member of the Board) discuss Mr. Tamblyn's case?

\* \* \* \* \* \*

"Q. Did you ever hear him (Mr. Jones) say words to this effect, maybe not exactly, but to this effect, that he is going to put Mr. Tamblyn in the Army if it is the last thing he did on earth?

\* \* \* \* \* \*

"Q. Did you ever hear either one of the members of the Board say that they did not recognize this Lakeside Church as a church in contemplation of this law, Selective Service Law?"

Each of these questions used the word "ever" and, if not otherwise objectionable, was not limited to any time that might be material. There was no attempt to attack the fairness of any of the other members of the Board or of any of the members of either of the Appeal Boards.

██ The defendant was the only witness who testified in his own behalf. He complains that he was not permitted to introduce witnesses from his church to testify concerning his claimed pastorate and the constitution of the church. We think that, clearly, the defendant had no right to try de novo the issue of his classification by the Selective Service Board. See Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152.

██ The appellant further claims that he was denied the right to an effective administrative appeal and was preju-

diced in the minds of the jury, because there was inserted in the registrant's Selective Service File a letter written by Board Member Van D. Jones to Colonel J. T. Johnson, Acting State Director, dated August 19, 1952, reading in part:

> "I have been informed by a sister-in-law of Thomas A. Tamblyn that it is not Tommie's desire to dodge his responsibility and service in the Armed Forces. In other words, the registrant made the following statement to his sister-in-law 'I would be better off in the Armed Forces and it is not my desire, but my father's and other members' of his Church, who are fighting so diligently to have me classified in IV–D.' "

The appellant insists that that letter was not discovered until after the trial and he offers in this Court affidavits of the appellant and of the appellant's only sister-in-law that the statements contained in the letter were false. His excuse for not having offered this evidence on his trial in the District Court is that his attorney was shown the file for only a few minutes and did not have time to properly acquaint himself with its contents. The record shows that, upon the trial, the District Attorney stated, without denial from defendant's counsel, that "Counsel had opportunity to examine the file", and that the Court further stated, "All right. Mr. Anderton, that file is available to you there. You can use any part of it that you want." No complaint was made at the trial of being allowed insufficient time to examine the file and no request was made for postponement or for the allowance of further time. That complaint cannot be considered for the first time on appeal.

Appellant has made some 38 specifications of error, but we believe that what has been said fairly covers all of his material contentions. We find no reversible error in the record and the judgment is therefore

Affirmed.