**UNITED STATES of America,
Appellee,**

v.

**Claude JAMES, Jr., Appellant.**

**No. 12919.**

United States Court of Appeals
Fourth Circuit.

Argued April 11, 1969.

Decided June 26, 1969.

R. G. Shannonhouse, Rocky Mount, N. C., for appellant.

W. Arnold Smith, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before BRYAN, WINTER and BUTZ-NER, Circuit Judges.

WINTER, Circuit Judge:

Defendant was convicted for violation of 50 U.S.C.A.App. § 462(a) and sentenced to a term of five years imprisonment for refusing to report for and submit to induction into the Armed Forces of the United States.[1] On appeal, defendant contends that the order to report for induction was invalid because he was improperly refused conscientious objector classification. From our examination of the record, we conclude that there was no basis in fact to classify defendant I–A and to deny him conscientious objector status. Accordingly, the judgment of conviction will be reversed.

---

[1] We note in passing that this case is similar to Kessler v. United States, 406 F.2d 151, 152 (5 Cir. 1969), in which the court of appeals commented that "[a]lthough the record shows without dispute that Kessler was highly religious and had been previously convicted of no offense other than failing to yield the right of way, he was sentenced to the maximum, five years imprisonment." See also, United States v. Fallon, 407 F.2d 621, 624 (7 Cir. 1969), cert. den., 395 U.S. 908, 89 S.Ct. 1749, 23 L.Ed.2d 220 (May 19, 1969).

We intimate no criticism of the district judge in this regard, nor do we propose to interfere with the traditional sentencing discretion of the district courts. We do, however, express the view that, because Congress has, in this area, granted to the district courts broad sentencing discretion in order that punishment may be tailored to the circumstances of individual defendants, it is to be expected that, in the normal course of events, punishment other than the maximum permissible would be imposed, as circumstances may warrant.

## I

The factual background of the case, as revealed by defendant's selective service file, is briefly as follows: In May, 1965, at age 18, defendant completed his initial classification questionnaire (SSS Form 100) in which he stated that he was pursuing a course of instruction at the Kingdom Hall, Greenville, North Carolina, under the direction of the Jehovah's Witness denomination in preparation for the ministry. At the same time defendant indicated, by signing in the appropriate place, that he was a conscientious objector and requested a special conscientious objector form. Because he had not at that time completed high school, he was classified I–S(H). In September, 1965, defendant enrolled in an agricultural business course and was thereafter classified II–S.

In October, 1966, the local board mailed to defendant a copy of the conscientious objector form (SSS Form 150). Therein he responded positively that he believed in a Supreme Being. He indicated that he was opposed to participation in war in any form and requested exemption from both combatant and noncombatant service. Defendant stated as the basis of his claim that "I don't believe in killing or aiding anyone else in killing. The Bible says thou shall not kill." Defendant further stated that he relied upon his father, who was a Jehovah's Witness, for spiritual guidance, and that "I acquired my belief from my father's teachings and from the meetings I attended in Jehovah Witness's homes and from meetings at the Kingdom Hall in the past three or four years." In answer to the question of under what circumstances, if any, he would sanction the use of force, he replied that he would do so strictly in self-defense, i. e., "[i]f someone attacked me and was going to kill me. Then I still wouldn't if there was any way to prevent it." Defendant further stated, "I never like to kill anything or see anyone else kill." In answer to the query whether he had ever given public expression to his religious views, he answered: "Yes. When I was working in Long Manufacturing Company in Tarboro. At Pitt Technical Institute this year." Defendant included the names of his father and a friend as individuals who could attest to the sincerity of his views.

The selective service file indicates that in March, 1967, defendant "dropped from full time [educational] program," whether voluntarily or not is unclear. He was forthwith reclassified I–A. He was subsequently ordered to report for induction on September 6. On that date he refused to be inducted because of his religious beliefs. On September 7, defendant's file was forwarded to the State Director of Selective Service. A few days later it was returned to the local board with the instruction that it be reopened "for the purpose of classification." There is no indication that additional evidence was considered by the local board, which again classified defendant I–A. After a second review, the State Director advised the local board that they should enter defendant's name on the record of delinquents and that he should be allowed to have a personal appearance within 30 days, if requested. Defendant did request a personal appearance, the local board's memorandum of which is as follows:

"Registrant appeared before the Board for his personal appearance and gave the following information:

Registrant was asked if he had any new or written information to present to the Board and he said no. He stated that he just does not believe in going into the service at all—that he does not believe in killing anyone. Registrant was asked by the Board as to whether he is now a member of a religious sect or organization and he stated that he is not. He stated that he attends the Jehoviah's [sic] Witness and believes in that religion but has not become a member. He stated that there is more to becoming a member than just joining. Registrant stated that he is now working at Carolina Office Equipment Company and

is going to night school at Pitt Technical Institute taking Architectural Drafting on Mon. Tue. and Thur. nights.

Registrant had very little to say."

Two days later defendant was notified that his classification would not be changed. Thereafter, his file was forwarded to the appeal board, which, some three months later, classified him I–A. Defendant's second order to report for induction proved to be abortive when the local board neglected to process certain forms, but finally, on June 4, 1968, defendant again refused to be inducted, citing his religious beliefs. Trial, conviction, and this appeal followed.

## II

■ In determining whether there was a basis in fact for defendant's classification, we consider at the outset an issue tangentially touched upon by the parties, namely, whether defendant actually submitted sufficient information to his local board to constitute a prima facie case for conscientious objector status, or whether, on the other hand, his claim is frivolous on its face. *Cf.* Miller v. United States, 388 F.2d 973, 976 (9 Cir.1967); Stain v. United States, 235 F.2d 339, 343 n. 13 (9 Cir.1956). We acknowledge in this connection that defendant's religious views are not set forth at length or articulately. Yet it is perfectly clear that defendant's timely assertions to his local board, if believed, demonstrate that he was brought up in, and had embraced, the religious tradition of one of his parents, who belonged to a denomination, the members of which have consistently opposed participation in war. Defendant asserted his personal objections, in light of this tradition, to participation in war in any form. He thus presented a prima facie case for exemption. United States v. Bortlik, 122 F.Supp. 225, 227 (E.D.Pa. 1954); *cf.* United States v. Freeman, 388 F.2d 246, 249 & n. 3 (7 Cir.1967). See also, Parr v. United States, 272 F.2d 416, 419 (9 Cir.1959).

■ Ever mindful that the conscientious objector exemption has traditionally been considered a matter of legislative grace [2] and that registrants must carry the burden of demonstrating that they are entitled to that classification,[3] we believe, nevertheless, that not only the articulate may qualify as conscientious objectors.[4] Entitlement to that status is not limited to those registrants who have read United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and its progeny, and can express their views with them as models, or to those registrants who have counsel familiar with selective service law available to assist them.[5]

Finally, we deem significant the absence of any indication that the local board considered that defendant's file contained deficiencies which could be corrected by the submission of further evidence. *Cf.*, United States v. St. Clair, 293 F.Supp. 337, 341 (E.D.N.Y.1968). See also, United States v. Purvis, 403 F.2d 555, 560–562 (2 Cir.1968); De-Remer v. United States, 340 F.2d 712,

2. But see, United States v. Sisson, 297 F. Supp. 902 (D.Mass.1969) (Wyzanski, J.), which rejects this proposition.

3. United States v. Carroll, 398 F.2d 651 (3 Cir. 1968); Salamy v. United States, 379 F.2d 838 (10 Cir. 1967); Fleming v. United States, 344 F.2d 912 (10 Cir. 1965).

4. *Cf.* United States v. Baker, 1 SSLR 3017, 3018 (E.D.N.Y.1968): "In determining whether a prima facie case had been made out (for conscientious objector status), the Court, in accordance with generally applicable legal practice, must construe the facts in a way most favorable to the registrant."

5. *Cf.* United States v. Seeger, *supra*, 380 U.S. at 184, 85 S.Ct. at 863: "It must be remembered that in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways. In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight.

718 (8 Cir.1965). Indeed, there is no indication that the local board even contacted those references which defendant had given in order that his sincerity could be verified.

### III

We consider then the critical question of whether the record reveals a basis in fact for the refusal to accord defendant conscientious objector status.[6] After thorough examination of the record, we are able to discern no such basis.

The starting point for analysis of a conscientious objector case remains Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955), in which the Supreme Court concisely stated the interrelation between objective and subjective factors to be taken into account in evaluating conscientious objector claims:

"[In conscientious objector cases] the registrant cannot make out a prima facie case from objective facts alone, because *the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form.* In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is 'affirmative evidence * * * that a registrant has not painted a complete or accurate picture * * *' Dickinson v. United States, supra (346 U.S. 389, p. 396, 74 S.Ct. 152, at p. 157, 98 L.Ed. 132). In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. * * * *If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith.*

*Since Witmer stated his beliefs with apparent sincerity, and since we find no indication anywhere in the record that his demeanor appeared shifty or evasive or that his appearance was one of unreliability,* we must examine the objective facts before the Appeal Board to see whether they cast doubt on the sincerity of his claim." 348 U.S., at 381–382, 75 S.Ct. at 396. (emphasis added.)

To begin in inverse order with the objective facts as revealed by the record in the instant case, counsel for the government candidly conceded on oral argument that the record reveals no basis upon which the local board could have denied conscientious objector status. We fully agree. This is *not* a case in which religious scruples were first revealed when a registrant's induction became imminent, or even after notice to report for induction had been received. See, e. g., United States v. Stafford, 389 F.2d 215 (2 Cir.1968); United States v. Gearey [1], 368 F.2d 144 (2 Cir.1966); United States v. Gearey [2], 379 F.2d 915 (2 Cir.1967). In the instant case defendant asserted his religious beliefs at the time of his initial contact with his draft board at age 18, and he has demonstrated a history of adherence to those views for several years prior to that time.

It is unnecessary that one formally belong to an organized religion or denomination in order to qualify for conscientious objector status. United States v. Hein, 112 F.Supp. 71, 75 (N. D.Ill.1953); United States v. Alvies, 112

---

6. Defendant argues that the district judge failed to make an independent determination of whether there was a basis in fact for his classification. A reading of the colloquy between the court and counsel at the trial indicates that this matter is in some doubt. It is clear, however, that if the district judge did believe that there was a basis in fact for the classification he at no point intimated what he thought that basis was. In any event, it is fully established that we may make our own independent examination of the record to ascertain the existence of a basis in fact for the classification. Cox v. United States, 332 U.S. 442, 452, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Tamblyn v. United States, 216 F.2d 345, 347 (5 Cir. 1954).

F.Supp. 618 (N.D.Cal.1953). See, United States v. Seeger, *supra*; United States v. Corliss, 280 F.2d 808, 813 (2 Cir.1960); Williams v. United States, 216 F.2d 350 (5 Cir.1954). Indeed, in the instant case, we believe that defendant's candid statements both to his local board and at the trial that he was not formally a member of the Jehovah's Witness sect and that "there is more to becoming a member than just joining" is an indication of his sincerity, rather than the contrary. In this connection, we note the view of Judge Solomon expressed in a similar case:

> "Defendant's claim was rejected because he had not been baptized as a Jehovah's Witness. I do not think this provides a basis in fact for the local board's action. At the trial, defendant explained that one cannot be baptized until he satisfies himself that he is 'strong enough.' Until baptism, he is not a true member of the faith. Although defendant studied the Bible and Watchtower Tracts at home, and attended religious meetings, he had not yet convinced himself that he could be baptized.
>
> The time of baptism (and hence membership) is left entirely to the individual. If defendant was not sincere he could have been baptized and would thus have been able to claim membership in his Form 150. Instead, not convinced that he was ready defendant continued to attend religious meetings and study the Bible and Watchtower Tracts at home. It would have been difficult to find evidence more persuasive of defendant's strict allegience [sic] to the requirements of his religion. The local board cannot rely on defendant's lack of baptism without some evidence that it should interpret his decision to detract from, rather than add to, the strength of his claim. The file contains no such evidence. * * *" United States v. Harris, 302 F.Supp. 1194 (D.Ore.1968). See also, United States v. Corliss, *supra*, 280 F.2d at 813.

Finally, it has long been held that defendant's belief as to the use of force in self-defense is not "so inconsistent with his claim of conscientious objection as to serve as a basis for a denial of his claim." Sicurella v. United States, 348 U.S. 385, 389, 75 S.Ct. 403, 405, 99 L.Ed. 436 (1955); United States v. Carroll, 398 F.2d 651, 655 (3 Cir.1968); Annett v. United States, 205 F.2d 689, 691 (10 Cir.1953).

We come finally to the subjective aspect of defendant's claim and to the government's contention that the only inference which remains is that the local board simply did not believe defendant's protestations of conscience. We do not doubt the general proposition that, in an appropriate case, a local board, on the basis of demeanor evidence, may make a determination that a particular registrant is not sincere in his beliefs. Campbell v. United States, 221 F.2d 454, 457 (4 Cir.1955). But see, United States v. St. Clair, *supra*, 293 F.Supp. at 344–345, where the court reluctantly assumed arguendo the correctness of this rule. However, it has been held that if the local board wishes to rely upon the registrant's lack of veracity, "the record must contain some statement of this disbelief if the classification is to be upheld upon judicial review." United States v. Washington, 392 F.2d 37, 39 (6 Cir.1968). United States v. Lonseth, 300 F.Supp. 857 (D.Ore.1969). See, United States v. Witmer, *supra*, United States v. St. Clair, *supra*, 293 F.Supp. at 345. We are persuaded that the *Washington* case correctly states the law. Particularly in an area such as this where "[w]e are dealing * * * with a question of personal liberty," Estep v. United States, 327 U.S. 114, 121–122, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946), we would be reluctant to sanction a decision of a local board when, from the record, we can only speculate that there *may* have been a basis in fact for the decision. The negative finding upon which our dissenting colleague rests so heavily may just as well be founded upon pure arbi-

trariness, a misconstruction of law, for example, the necessary elements of a prima facie case, or a determination of credibility. Where the local board's conclusion may be explainable upon alternate grounds, both legally acceptable and unacceptable, the risk is too great that we would place an imprimatur upon an insupportable basis of decision if we were to accept the government's contention. See, Sicurella v. United States, *supra*, 348 U.S. at 392, 75 S.Ct. 403.

■ We are constrained to add that it is *not* sufficient that the board merely state its disbelief in a registrant's sincerity, for "to sustain the denial of a claim on a mere *ipse dixit* of lack of sincerity from the Local Board or the hearing officer would create serious possibilities of abuse." United States v. Corliss, *supra*, 280 F.2d at 814. In short, there must be a "rational basis" for the refusal of the Board to accept the validity of a registrant's religious claims. Roberson v. United States, 208 F.2d 166, 169 (10 Cir.1953). As recently stated by the Court of Appeals for the Fifth Circuit,

> "To be precise about it, the disbelief of Selective Service officials will not justify the rejection of a claim for conscientious objector status unless there is some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which *substantially* (emphasis added [by the Fifth Circuit]) blurs the picture painted by the regis-

trant and thus casts doubt on his sincerity. Batterton v. United States, 8 Cir., 1958, 260 F.2d 233." Kessler v. United States, 406 F.2d 151, 156 (5 Cir.1969).

To the same effect, see, *e.g.*, United States v. Washington, *supra*; Fleming v. United States, *supra*, 344 F.2d at 915; Parr v. United States, *supra*; Batterton v. United States, *supra*, 260 F.2d at 236–237; Riles v. United States, 223 F. 2d 786, 792–793 (5 Cir.1955); Williams v. United States, 216 F.2d 350 (5 Cir. 1954); Pine v. United States, 212 F.2d 93 (4 Cir.1954); Annett v. United States, *supra*; Roberson v. United States, *supra*; United States v. Gabris, 302 F.Supp. 235 (E.D.N.Y.1968); United ed States v. Warner, 284 F.Supp. 366, 369–370 (D.Ariz.1968); United States v. St. Clair, *supra*, 293 F.Supp. at 344–345.[7]

■ Because the record in the instant case thus discloses *no basis whatever*, objective or otherwise, for doubting defendant's sincerity in his adherence to his religious views against participation in war in any form, the judgment of conviction will be reversed with directions to enter a judgment of acquittal.

Reversed with directions.

ALBERT V. BRYAN, Circuit Judge (dissenting):

In my judgment there was adequate basis for the decision of the Local Board. It was that the registrant had

7. What we hold in the instant case is not inconsistent with the holding in Salamy v. United States, 379 F.2d 838 (10 Cir. 1967). There the court merely held that there was a basis for doubting the registrant's sincerity when he first applied for conscientious objector status when induction became imminent and after applications for other exemptions had been rejected. Such is not our case. So, also, the decisions in Campbell v. United States, *supra*, and Gaston v. United States, 222 F.2d 818 (4 Cir. 1955) (per curiam), are distinguishable on their facts, for, in each, the court determined that there was a basis in fact for rejection of the exemption, *e. g.*, the imminence of in-

duction before application was first made for conscientious objector status.

We have no occasion in the instant case to determine if the broad language employed in *Campbell* and *Gaston*, as well as United States v. Helm, 386 F.2d 434 (4 Cir. 1967); and United States v. Al-Majied Muhammed, 364 F.2d 223 (4 Cir. 1966), should be refined in the light of United States v. Gearey, *supra*, to draw a distinction between a registrant whose views about conscientious objection ripened before receiving a notice to report for induction but who failed to assert them, although reasonably he had the opportunity to do so before receipt of the notice, and one whose views did not ripen until after the notice issued.

not proved his claim for classification as a conscientious objector. Concededly, it was his burden; he simply did not carry it.

There was, too, an altogether adequate finding of this deficiency; it is the plain and fair implication of the Board's conclusion. A determination arising from absence of proof is as much a finding of fact as a positive one declaring the existence of proof. Here a negative finding was the "basis in fact for the refusal to accord defendant conscientious objector status", to quote the court's clear putting of the issue. I cannot understand how, then, it can be said there is no finding to support the Board's determination.

That the Board could well have acted on a disbelief of the registrant is acknowledged by the majority. Nevertheless it overrules the Board because it did not put into the record a prim declaration of doubt. A more emphatic pronouncement and demonstration of unbelief than the refusal of the registrant's request is hardly conceivable, for his claim rested on his oath. The Board's rejection of his assertion utterly discredited the claimant's testimony. Surely, so obvious a meaning of Board action does not have to be spelled out to be recognized. Words saying formalistically that the Board doubted the registrant would have been a superfluity. To rely on the omission is to subordinate substance to style to overthrow the Board.

No matter how positive or unequivocal the evidence of a witness reads in print, the severest analysis for assaying his truthfulness is in observing him—his manner of speaking, his attitude, one of frankness or evasion, responsiveness or reluctance, his grasp of the inquiries, and an understanding to distinguish between patriotic and conscience obligations. The cold transcript on which we appraise him is not so faithful in reflection of reality as the picture the witness exhibits in himself to the Board. Nothing conveys sincerity or exposes insincerity like the personal appearance. I

do not feel capable of a better judgment second-hand.

It is suggested that because the Board *could* have founded its decision on arbitrariness, misconstruction of law or some other ground than disbelief, it should be required to state the reasons for its determination. Any and all of these elements, if we are to indulge in speculation, could be just as readily hidden in a formal statement of distrust of the registrant. Indeed, they *could* be in any conclusion of the Board, but surely it does not have to disavow explicitly the entry into its judgment of each of these or other unacceptable factors. But suppose it did make such disclaimers, could not these protestations be subject to the same speculation? Refusal of credence to the registrant's testimony is so squarely demonstrated here that I see no reason to engage in hypotheses to the contrary.

The majority opinion puts the burden upon the Board to acquit itself of these unfair possibilities. Certainly, a presumption of fair dealing is accorded by law to the Board members. Congress has reposed in them the power and responsibility of decision of the facts—as neighbors or lay citizens—and so expressed faith that they would not vote capriciously in this resolution. Confidence of this kind is not uncommon in our governmental system. Comparably, when credibility of a defendant is the sole determinant in a criminal case, and determinable alone from *observation* of him on the witness stand, the jury or the judge may find guilt without appending the reasons for rejecting his testimony. I would extend this confidence to the Board until it is overridden by proof. None is proffered here.

I did not understand counsel for the United States to concede there was no basis for the Board's denial of exemption. True, in response to questions from the bench as to the existence in the record of evidence upholding the Board, he answered there was none. He meant there was no affirmative proof denying

the claim or refuting it. Absence of proof was the determinant, and so counsel's answer did not acknowledge infirmity in the Board's action.

I would affirm the order of the District Court.