**Private David H. O'BRIEN, Appellant,**

v.

**Stanley RESOR, Secretary of the Army, Washington, D. C., Appellee.**

**No. 13538.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1969.

Decided March 18, 1970.

---

ed into the United States Army and has been serving as a private. He then sought release by applying for a writ of habeas corpus from the district court. Relief was refused because the district court found a basis in fact for denying the classification because of O'Brien's failure to assert it for four and one-half years after his initial registration and I–A classification and because of O'Brien's obtention of other classifications deferring military service during that period. The district court, in denying relief, did not discuss O'Brien's claim that he was denied procedural due process of law resulting from the failure of the local board and the state board of appeals to make findings with respect to his claim, although it concluded generally that O'Brien's constitutional rights had not been violated. O'Brien has appealed. We reverse the order of the district court and remand the case with directions to issue the writ.

Lemuel H. Davis, Raleigh, N. C., and Harold Buchman, for appellant.

J. C. Proctor, Asst. U. S. Atty. (Robert H. Cowen, U. S. Atty. on brief), for appellee.

Before SOBELOFF, BRYAN and WINTER, Circuit Judges.

WINTER, *Circuit Judge*:

Believing that his claim for classification as a conscientious objector has been illegally denied him, David H. O'Brien, nevertheless, obeyed the order of his local board to report for induction, was induct-

## I

O'Brien's selective service history as found by the district court and as reflected in his selective service file is as follows: O'Brien registered with the draft board on September 5, 1960. He returned his first selective service system questionnaire on February 1, 1963, at which time he left blank the series of questions relating to a possible claim for conscientious objector status. He was classified I–A on February 18, 1963, and was ordered to report for a physical examination on January 17, 1964. O'Brien then applied for enlistment in the United States Army Reserve and was found on January 17, 1964, to be qualified. However, the following month he was refused admission in the reserve unit on the basis of a physical disability.

On March 16, 1964, O'Brien was classified I–Y by his local draft board on the basis of a knee injury, and maintained that classification until June 20, 1966. On the latter date he was again classified I–A, after he had undergone an additional medical examination and orthopedic consultation at a naval hospital.

O'Brien sought reconsideration of his I–A classification on June 23, 1966, on the ground that he was a college student. Initially the local board refused to classify him as a student because the documents in his file indicated that he was only a part time student and not eligible for deferment, but after an order to report for induction, which issued September 19, 1966, certificates showing O'Brien's enrollment as a full time student were supplied to the board, and the order to report for induction was cancelled. O'Brien was then classified as I–S(C) and maintained that classification until shortly after he completed his junior college studies.

O'Brien was again classified I–A on July 17, 1967. He appeared before his local board on August 14, 1967, and expressed his desire to continue in school until the end of the semester and his desire that he retain his student deferment. The board denied the request on the grounds that he had reached his twenty-fourth birthday and was no longer eligible for the student deferment. O'Brien then indicated that he would like to appeal this classification and the board sent him formal notice of a I–A classification and the forms for filing an appeal. O'Brien did not pursue this course and, on September 10, 1967, he informed the board that he was conscientiously opposed to participation in the military and war in any form, and requested SSS Form 150, applicable to conscientious objectors. On September 29, 1967, he returned the form with eight supporting letters. He appeared before the Board on October 23, 1967, and, after receiving the information which he submitted and discussing the matter with him, the board continued his I–A classification. The only record of the board's action in this regard is the entry in his selective service folder of the minute, which reads, "Registrant appeared before local board relative to his claim on SSS Form 150. Board reviewed information submitted and continued I–A based on his personal appearance." The local board granted O'Brien a second interview on November 14, 1967, and a minute was entered for that date that the board decided that O'Brien "did not qualify for I–A–O and registrant was advised of action that information presented did not warrant the reopening of his case." O'Brien exercised his right of review by the state appeal board, which unanimously rejected his claim. Nothing in O'Brien's selective service file records the basis of the state appeal board's decision. An order to report issued on February 15, 1968, and O'Brien was inducted on March 11, 1968.

## II

■ We consider first whether O'Brien made a prima facie case establishing that he was a conscientious objector as defined by 50 U.S.C.A. App. § 456 (j). From our examination of his written claim to that status, the detailed information in the SSS Form 150 which he signed and the supporting data, we conclude that a prima facie case was made.

O'Brien established that his father was an adherent of the Roman Catholic Church and his mother a Methodist. He claimed that he believed in a Supreme Being and that his conscientious objection to participation in war in any form and to participation in noncombatant training and service in the armed forces stemmed from his religious belief, i. e., "[m]y life and actions are answerable only to God, and not to man. I believe God's most precious gift to man is life; no man has the right to destroy life or the authority to command another individual to destroy life." In response to the inquiry of the source of his belief, he stated that his religious training was primarily acquired from his parents and his home environment. From these sources he was taught "to love God and to serve God and our fellowman," and, in addition, he was taught the commandments " 'Love thy neighbor' and 'Thou shalt not kill.' " He added, "[t]he teachings of the church reinforced my parents' teachings."

While O'Brien acknowledges that he was not a formal member of any church and that he relied upon his "personal conscience, convictions, and belief in God for guidance," he named a priest of the Protestant Episcopal church as the person to whom he would go if he needed consultation. This priest wrote one of the letters in support of his claim, and from the letter it appears that he had talked at great length to O'Brien about O'Brien's claimed conscientious objection to the military service. He affirmed that O'Brien was unquestionably a conscientious objector, as well as a person who believed in a Supreme Being, and lived his life "morally responsible to this belief." It was the priest's conclusion that O'Brien's beliefs were based on moral, theological and psychological foundations.

The form further disclosed that O'Brien had been a student in public schools in Baltimore, Maryland, Boca Raton, Florida, Delray Beach, Florida, Suffolk, Virginia, and again in Baltimore, Maryland, from 1947 to 1967, and that he had also held various jobs as a mechanic's helper, grocery clerk and salesman for a seed company. In the course of his life, he had been a member of the cub scouts, a church choir and a church club.

O'Brien expressed his conviction that he did not believe in the use of force except to the extent of defending his own person or the persons of those attacked by others, and even then he would employ force only to the extent of repelling the attack but not to harm the attacker. He recited three examples during his life when he had practiced these beliefs.

From the supporting data, it appears that O'Brien has two brothers, one of whom is a volunteer in the Peace Corps and Vista, and who is enrolled in the graduate school of social work at the University of Chicago, and another whose occupation was that of a social worker.

A summary which O'Brien furnished the local board following his interview of October 23, 1967, shows that O'Brien explained to the draft board his reason for not seeking the classification of conscientious objector at an earlier date. The correctness of the summary does not appear to be disputed. It sets forth that after O'Brien's last appearance before the board, which occurred on August 14, 1967, he visited the American Friends. At that time he did not know what the classification of conscientious objector meant or how to apply. He received advice as well as literature, and he discovered that the moral and religious beliefs which he held coincided with those of a conscientious objector, so that he concluded to make a formal request for that status.

From this recitation, we think that O'Brien showed prima facie that he was conscientiously opposed to participation in war in any form and that these views resulted from his religious training and belief, and not essentially political, sociological or philosophical views or a merely personal moral code. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); United States v. James, 417 F.2d 826 (4 Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4 Cir. 1969); Lockhart v. United States, 420 F.2d 1143 (9 Cir. 1969).

### III

Since O'Brien made a prima facie case that he was a conscientious objector, it follows from our recent decisions in United States v. Broyles, 423 F.2d 1299 (4 Cir. 1970), and United States v. James, 417 F.2d 826 (4 Cir. 1969), that the order to report for induction was invalid, because neither the local board—both in its rejection of the claim and in its refusal to reopen his case—nor the appeal board—in unanimously rejecting the claim—assigned any reason or basis for its decision.

O'Brien's case is one which suggests strongly the correctness of the rule which we stated in Broyles and James because the record shows that our fears, implicit in those opinions, that local

boards *may* act arbitrarily or under a misconstruction of law are not purely theoretical but real. O'Brien made a transcript of his appearance before the board on October 23, 1967, and November 13, 1967. The selective service regulations nowhere permit the making of an official transcript, and O'Brien's right to make an unofficial transcript is not undoubted. However, 32 C.F.R. § 1624.2(b) does provide that a registrant at his appearance before the local board may "present such further information as he believes will assist the local board in determining the proper classfication. Such information shall be in writing, or, if oral, *shall be summarized in writing by the registrant* and, in either event, shall be placed in the registrant's file." (emphasis supplied.) Arguably, the regulation thus contemplates the possibility of the furnishing of post-appearance documents. The regulations, 22 C.F.R. § 1626.12, also permit a registrant appealing his classification by the local board, *inter alia*, to "attach to his appeal a statement specifying the matters in which he believes the local board erred." Again arguably, if a transcript showed that a local board acted improperly, it would be competent evidence to establish the fact. In any event, the accuracy of the informal transcript was not disputed by the local board and is not challenged before us.

O'Brien's transcript shows that at his interview on November 13, at which five board members and the clerk, Mrs. Virginia Taylor, were present, the following discussion occurred:

"Mr. Ballard: Is there something you wanted to add to your case?

Me: No. I only wanted to discuss my classification of I–A so that I might answer any of your questions and doubts.

Mr. Ballard: We don't actually have any questions. We studied your file and feel we can't classify you I–O.

Me: Could you tell me why you made this decision. Is it because you doubt some of my answers or convictions?

Mr. Ballard: *We don't actually doubt your beliefs*—its just that you never applied before.

Me: I realize I never applied before but according to the regulations there isn't really any time stipulated for an individual to register as a conscientious objector. According to the Supreme Court, it's simply whether or not an individual is sincere and lives according to his beliefs in a Supreme Being.

Mr. Ballard: Well, there are many regulations concerning this and its just a hair-line border between them. We just don't feel we can give you the classification.

Me: If you've read my material, you've seen I have lived according to my convictions over the years. There are letters from friends who have known me over the past four years, my roommate, professors, a minister, and my brothers, who I'm very close to and who know my feelings. All of these people have written because they feel I am sincere in my beliefs.

Mr. Ballard: Yes, we have read the letters and *we believe you are sincere*. All of us as Christians don't believe in killing and when the time comes we must think about it.

Me: Then its just that I applied late.

Mr. Ballard: No, not really, *it's just that you should appeal to the Board of Appeals.*

Older Man: Yes, I think it would be better for you if you appeal it. *The board seems to have more time for things like this. They have the time to read your material and won't make any hasty decisions.* Yes, I think it's best to appeal it." (emphasis supplied.)

\* \* \* \* \* \*

Me: But if you gentlemen feel I'm sincere why can't you classify me as a conscientious objector?

Mr. Ballard: *We certainly feel you're sincere.* You certainly wouldn't drive all the way from Baltimore on just a hunch. Why it's not just the expense there's a lot of time involved." (emphasis supplied.)

If accepted as accurate, the discussion indicates that one board member had no doubt about the sincerity of O'Brien's claim, and the fact of acceptance of his sincerity logically would indicate that his credibility was not doubted either. This same member, as well as another, also seemed to be saying that the board was reluctant to carry out its responsibility of deciding the claim on its merits in the first instance and wished to abdicate that duty in favor of the state board of appeal. If O'Brien established a prima facie case and his sincerity was not questioned, he should have been granted his conscientious objector's claim. If the board was simply reluctant to carry out responsibility vested in it and concluded to deny the claim for that reason, manifestly it acted unlawfully.

We reach no firm conclusions that O'Brien's local board did or did not act unlawfully. Nor do we decide that O'Brien should or should not have been classified as a conscientious objector. Those are matters for the board and the scope of our review is quite limited. We conclude that its failure to disclose the basis on which it acted renders invalid the board's order to report for induction under which O'Brien was inducted into military service. The order of the district court is reversed, and the case remanded for the entry of an order granting the writ.

Reversed and remanded.

ALBERT V. BRYAN, Circuit Judge (dissenting):

Again the Court reverses the Selective Service Board, the Appeal Board, and the District Court because the administrative agency in classifying O'Brien as 1–A did not state its reasons. As stated in the dissent in United States v. Broyles, 423 F.2d 1306 (4 Cir. 1970), nei-

ther the statute nor due process, in my judgment imposes any such requirement.

Also, I think the majority is on shaky ground in relying, as it does in part, on what certain Board members said to O'Brien. After his final classification O'Brien returned to catechize the Board on its determination. One or two of the members responded that they thought he was sincere. On this score the Court finds evidence of sincerity in O'Brien's claim.

But this was not a Board *finding* of sincerity or credibility. Nor was it Board action, which actually was quite to the contrary. After all, what counts is what is done. Here the several members could have been praising O'Brien's diligence in pressing his claim rather than the sincerity of his belief.

In sum, again I do not believe the Board was required or intended to state the reasons for its conclusion. As the majority disclaims any indication of how the Board should have resolved the application of O'Brien for CO status, I refrain from discussing the sufficiency of the evidence upon the point.