**UNITED STATES of America**

**v.**

**John Charles PRINCE.**

**Crim. No. 70–18.**

United States District Court,
D. Maine, S. D.

March 31, 1970.

Peter Mills, U. S. Atty., Edward G. Hudon, Asst. U. S. Atty., Portland, Me., for plaintiff.

Matthew S. Goldfarb, Portland, Me., for defendant.

## MEMORANDUM OF OPINION AND ORDER

GIGNOUX, District Judge.

John Charles Prince was indicted for refusing to submit to induction into the armed forces of the United States in violation of 50 U.S.C. App. § 462(a) (1967). He has been tried to the Court without a jury. The single question presented is whether there is revealed in his Selective Service record any "basis in fact" for the denial of his request for classification as a conscientious objector. 50 U.S.C. App. § 460(b) (3) (1967); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Dickinson v. United States, 346 U.S. 389, 394, 396–397, 74 S.Ct. 152, 98 L.Ed. 132 (1953). The relevant record consists of defendant's Selective Service file as supplemented by testimony of the State Selective Service Director, the Secretary of defendant's Local Selective Service Board and the defendant.

There is no dispute as to the essential facts. On May 4, 1966, shortly after his 18th birthday, defendant registered with his Local Selective Service Board in Lewiston, Maine. In his Classification Questionnaire (SSS Form 100), filed

May 23, 1966, he reported that he was a full-time high school student, but made no claim of conscientious objector status. Upon his graduation from high school in June 1966 he was classified I–A (Available for military service). In the fall of 1966 defendant entered the University of Maine and was reclassified II–S (Student deferment), a classification which he maintained until March 1968 when he dropped out of college and was reclassified I–A.

In the meantime defendant had gone to New Haven, Connecticut, to stay with his sister and brother-in-law, who was a student at the Yale Divinity School. On April 17, 1968 defendant wrote his Local Board "appealing" his I–A classification; stating that he was conscientiously opposed to war in any form by reason of his religious training and belief; and requesting SSS Form 150, the "Special Form for Conscientious Objector." He completed and returned the Form 150 on May 3, together with three supporting letters, one of which was from his brother-in-law, attesting to the sincerity and religious nature of his beliefs. In his answers to the questions on this form, defendant stated that he was not a member of any formal religious sect or organization, but that he believed in a Supreme Being, i. e., man's "consciousness of the Ultimate [coming] from within a man's Self, which is the part of him that perceived Supreme Being." He stated that his convictions were based principally on the teachings of "Eastern Spiritual Teachers" and cited a number of books which had had an important influence on him, including Huxley's *Brave New World* and *Brave New World Revisited,* Orwell's *1984,* Reimer's *The Harrad Experiment* and *Yale Marat's Rebellion,* M. K. Sen's *Hinduism,* two books of Hindu Scriptures, Tillich's *Courage To Be* and Schell's *The Village of Ben Suc,* together with the poems of Walt Whitman and Carl Sandberg. Defendant further stated that he had found the Christian worship of his youth (his parents were Baptists) hypo-

critical and had therefore sought elsewhere for spiritual guidance. He concluded:

> My conscience is my only real guide to Supreme Being, and my conscience tells me that the world's spiritual leaders are right. In order to obey my conscience, I cannot agree to kill anybody else, or help anyone else do the killing. To do so would be to give in to my ego, and deny my religious beliefs.

On May 20 the Local Board reviewed defendant's conscientious objector claim and again classified him I–A. The file contains no statement of the reason for the Board's action. Defendant then requested a personal appearance before the Local Board. This was had on July 22, following which the Board wrote defendant that "the information submitted does not warrant the reopening of your classification." There is no record of what transpired at this interview other than the minutes of the Local Board which read:

> We had registrant come in to speak to the Board Members at the July 22nd. meeting and then wrote him that they did not reopen his classification.

At about this time defendant's brother-in-law, who had not been permitted to appear with defendant at the July 22 interview, wrote another letter to the Board attesting to defendant's sincerity and to the fact that his views "fall clearly within the guidelines set forth in the 1965 Seeger case." Defendant next appealed his I–A classification to the State Appeal Board, which on October 22 voted to continue him in Class I–A. No statement of the reasons for the Appeal Board's decision appears in the file.

On December 9 defendant was ordered to report for induction on January 9, 1969. On December 24 he wrote the State Selective Service Director asking him to delay his induction and to reopen his classification "because I do not believe my case has been fully heard or un-

derstood." In this letter defendant further stated:

> I have found no indication that either the Local Board or the Appeal Board had any evidence contradicting my claim. * * * No board or person has given any indication of why my claim has been refused. I have already supplied what seems to me adequate verification of my claim. More material is being added regularly and I can obtain even more.

On December 27 the State Director requested the Local Board to reopen defendant's classification, and on January 2 his induction order was cancelled. Letters of support from two other Yale Divinity School students were added to the file at this time. On January 20 the Local Board again reclassified defendant I–A. No minutes appear in the file. Defendant again requested a personal appearance, which was granted him on February 6. This time the Secretary of the Board prepared detailed minutes, which read as follows:

> Registrant asked Board Members present, Mr. Choate, Mr. Blatt, Mr. Anthoine, why they had not at the first interview at Board Meeting July 22, 1968, granted him a C.O. Classification. Mr. Anthoine answered it was because they did not believe he warranted that classification. Registrant went on questioning members who answered they were not on trial, but were members of this Local Board to judge classifications and vote for same. They were granting him interview so he could present his case to them once again and he was told they would listen to him. He was asked what religion he practiced and he answered none, that churches were crooked as hell, and all who practiced religion were hypocrites. Mr. Anthoine told him as long as he lived he would be outstanding in his memory and the registrant answered he was happy to have made an impression.

Said his one semester at U of Maine listening to his classmates discuss the Vietnam situation made him realize he wanted no part of it. Mr. Anthoine asked him about his being dropped from U of Maine, and registrant answered he was not dropped, he left and had a letter at home that he would be accepted again, but he was waiting to see how this Draft Board thing would turn out before he decided what he would do. Members told him he would hear in the mail on their decision.

Both defendant and the Secretary testified at the trial that this record was a substantially complete and accurate reflection of what transpired, with one significant exception. Defendant testified on cross-examination that he was asked by the chairman whether he was a member of any "formal religious sect," and that, in answer to this question, he gave a negative answer. That this was the sense of the chairman's inquiry was confirmed by the Secretary's testimony that the defendant was asked "what religion he belonged to, you know, what sect."[1] Defendant and the Secretary agreed that from the start of the interview defendant repeatedly inquired as to the reason for the Board's rejection of his conscientious objector claim and that the Board members refused to give any reason other than that "they did not believe he warranted that classification." They also agreed that the atmosphere was hostile throughout.

On the night of defendant's February 6 interview the Board again voted 3 to 0 to classify him I–A, and on March 12 the State Appeal Board affirmed this classification, the record containing no statement of the reason for the Appeal Board's action.

On April 23 defendant was ordered to report for induction on May 14. Defendant did report, but refused to step forward after all proper warnings had

1. Defendant also testified that he had said that only "some" and not "all" who practiced "what they call religion" were hypocrites.

been given him. His indictment and this prosecution followed.

■■ As this Court has stated in its opinion in United States v. Berg, 310 F. Supp. 1157 (D.Me. Mar. 31, 1970), the scope of judicial review of a Selective Service classification is exceedingly narrow, Blalock v. United States, 247 F.2d 615, 619 (4th Cir.1957); the courts are not to act as "super draft boards," Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1955); and the sole question is whether a "basis in fact" exists for the classification given. Estep v. United States, *supra.*

After a thorough examination of this defendant's Selective Service record, which has been summarized above, the Court can find no basis in fact for the refusal to accord him conscientious objector status.

■ At the outset, it is clear, as the Government concedes, that defendant in his completed Form 150 and its supporting documents submitted to his Local Board sufficient information to constitute a *prima facie* case for a conscientious objector classification. Since United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), it has been established that a registrant must not be denied classification as a conscientious objector simply because he does not believe in a "traditional God" or is not a member of an organized church or religious sect. It is enough if he is opposed, on religious grounds, to "participation in war in any form." United States v. Seeger, *supra*, 380 U.S. at 183–185, 85 S.Ct. at 861; Bates v. Commander, First Coast Guard District, 413 F.2d 475, 479 (1st Cir.1969); United States v. St. Clair, 293 F.Supp. 337, 342–343 (E.D.N.Y.1968); United States v. Shacter, 293 F.Supp. 1057, 1060–1061 (D.Md.1968). It is also well settled that opposition to the Vietnam war is not, as the Government seems to suggest, inconsistent with opposition to all wars. Bates v. Commander, First Coast Guard District, *supra*, 413 F.2d at 479; Kessler v. United States, 406 F.2d 151, 155

(5th Cir.1969); United States v. St. Clair, *supra*, 293 F.Supp. at 344. Without question, defendant's expressed views meet the statutory requirement for classification as a conscientious objector. *Cf.* United States v. James, 417 F.2d 826, 829 (4th Cir.1969); United States v. Baker, 1 SSLR 3017, 3018 (E.D.N.Y. Feb. 9, 1968).

■ Since defendant presented a *prima facie* case for exemption to his Local Board, the record must disclose some affirmative evidence which casts doubt on the sincerity of his claim. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, *supra*, 346 U.S. at 396, 74 S.Ct. 152, 98 L.Ed. 132; United States v. Corliss, 280 F.2d 808 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960); Batterton v. United States, 260 F.2d 233 (8th Cir.1958). In conscientious objector cases, while "any fact which casts doubt on the veracity of the registrant is relevant," if his sincerity and good faith belief are in issue, "there must be some inference of insincerity or bad faith." Witmer v. United States, *supra*, 348 U.S. at 381–382, 75 S.Ct. at 396. Mere "suspicion and speculation" concerning a registrant's sincerity is not a proper basis for denial of a claim which is *prima facie* within the statutory exemption. Dickinson v. United States, *supra*, 346 U.S. at 397, 74 S.Ct. 152. In short, a conscientious objector claim cannot be arbitrarily rejected because of a mere disbelief in its sincerity. There must be an "honest and rational" basis for the denial. United States v. Corliss, *supra*, 280 F.2d at 814; United States v. James, *supra*, 417 F.2d at 832; United States v. Martin, 416 F.2d 44, 49 (10th Cir.1969); Kessler v. United States, *supra*, 406 F.2d at 156.

■ In the instant case, the record discloses no proper basis for questioning defendant's sincerity or his good faith opposition, on religious grounds, to participation in war in any form. The file reveals no inconsistencies in his actions or in his written statements of his reli-

gious beliefs that would justify denial of his claimed classification. There is no suggestion that defendant's demeanor was shifty or evasive, or that his appearance gave an impression of unreliability. *See* Witmer v. United States, *supra*, 348 U.S. at 382, 75 S.Ct. 392. Furthermore, the record contains no statement that the Board questioned defendant's veracity, and there is no basis for assuming that the Board relied upon defendant's demeanor or appearance in rejecting his claim. *Cf*. United States v. St. Clair, *supra*, 293 F.Supp. at 345.

■ Despite repeated requests from the defendant, no reasons for the denial of his claim were ever given him. The Local Board may simply have disbelieved his sincerity. It may have acted on the erroneous belief that he did not meet the statutory requirements for conscientious objector status because he was not a member of an organized church. It may have acted on some other ground, as yet undisclosed. Because neither the Local Board nor the Appeal Board gave any reason for the denial of defendant's claim, the Court cannot determine with any degree of assurance whether there was a proper basis for the decision. In such a case, where no reason has been assigned for the rejection of a conscientious objector claim, and where there is no objective evidence which in itself would justify denial of the claim, the Court is not permitted to speculate as to whether there *may* have been a proper reason for the Board's decision. United States v. James, *supra*, 417 F.2d at 831–832; United States v. Haughton, 413 F.2d 736, 739, 742–743 (9th Cir. 1969); United States v. Washington, 392 F.2d 37, 39 (6th Cir.1968); United States v. Lonseth, 300 F.Supp. 857, 859 (D.Or.1969). *Cf*. United States v. Curry, 410 F.2d 1297, 1300 (1st Cir.1969).

Since there was no "basis in fact" for the denial of defendant's request for classification as a conscientious objector, the induction order upon which this prosecution rests is invalid, and defendant is not guilty of the offense charged in the indictment.

Judgment will be entered directing that the defendant be discharged.

It is so ordered.