UNITED STATES ex rel. Cary E. DON-HAM, Petitioner-Appellant,

v.

Stanley R. RESOR, Secretary of the Army, and Major General William Knowlton, Superintendent, United States Military Academy, West Point, New York, Respondents-Appellees.

No. 387, Docket 35512.

United States Court of Appeals, Second Circuit.

Argued Dec. 3, 1970.

Decided Jan. 6, 1971.

---

Joan Goldberg, Rabinowitz, Boudin & Standard, New York City (Victor Rabinowitz, New York City, National Emergency Civil Liberties Committee, of counsel), for petitioner-appellant.

Michael I. Saltzman, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. S. D. N. Y., of counsel), for respondents-appellees.

Before FRIENDLY, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Petitioner, a cadet at West Point, sought separation from the Academy at the end of his third year because he had become a conscientious objector. A cadet may not withdraw from the Academy after his second year without incurring an immediate military duty requirement unless excused by separation as a conscientious objector. The Army rejected his conscientious objector claims on the grounds that his beliefs lacked the necessary depth of sincerity. Petitioner brought an action in the United States District Court for the Southern District of New York for a writ of habeas corpus, attacking both the substance of and procedure leading up to the Army's decision. The court, Marvin E. Frankel, *Judge,* denied the writ. We find error and reverse and remand with instructions to stay active duty orders pending further proceedings by the Army.

The points in issue on appeal are, basically, three: what is the applicable standard of judicial review; was the Army's decision supportable under the correct standard; and in any case, did

the Army fail to follow its own regulations, to the prejudice of petitioner.

It has long been established that the proper standard of review in Selective Service cases has been whether the deciding body had any basis in fact for its decision. Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946). Originally, it seems that both sides in this case accepted the application of that standard here. However, petitioner, subsequent to the initial hearing in the district court, argued that the "no basis-in-fact" standard is unconstitutional as applied here, and that the proper standard of review is the one familiar in the administrative law area, "substantial evidence." Judge Frankel rejected the argument. Petitioner argues that although the standard may be constitutional in the Selective Service area, it is not when applied to an in-service conscientious objector applicant. This is so because "all of the officers conducting interviews and making decisions are in the Army, and there is no right to appeal from the Army determination." It is contended that the Army officer who hears the applicant's case generally possesses views that "concededly do not embrace conscientious objection and whose very position in the Army may make it impossible for him to be objective." In Selective Service cases, on the other hand, the local board consists of volunteer civilians, and there is a right of appeal to the State Appeal Board. This argument, however, is based on unproven assumptions. We cannot say that fair determination is not possible within the military, and the Army regulations themselves are designed to provide it. However, even though the standard is the same as in draft cases, and review is limited to the narrow issue of whether there is a basis in fact for the Army determination, the courts have, of course, required the Army to base its findings upon objective evidence.[1]

In any case, petitioner argues that there was no basis in fact for the Army's decision. This claim we must reject.

Judge Frankel expressed the opinion that if he had been commissioned to decide independently petitioner's application for discharge, petitioner's arguments might have prevailed. Judge Frankel felt, however, that given the court's more limited role, he was forced to uphold the Army's decision, since there did exist a basis in fact to support it. Were there complete compliance with the Army requirements in reaching the determination, we would be constrained to agree.

Petitioner filed his application for discharge on May 29, 1970. He stated that his "beliefs concerning war stem from a belief in God and in the New Testament teachings of Christ." He believed that he had no right to take the life of any other person, yet in the Army, one is taught that killing is not only necessary but is also acceptable. He said his beliefs stemmed from childhood, but, somewhat surprisingly, he went on to note that "West Point has been a goal of mine for many years," for the prestige, because it provided a way to serve his country and because it "seemed to offer everything worthwhile in an education." Although the bayonet training was disturbing at the outset, he pushed it to the back of his mind.

1. See, for example, United States ex rel. Brooks v. Clifford, 409 F.2d 700, 707 (4 Cir. 1969), in which it was held that although the scope of review was sharply limited to determining whether there was a basis in fact for the Army's decision rejecting an enlisted man's conscientious objector claim, "The fact that petitioner delayed the assertion of his claim until after his views had been formulated and that that did not occur until after his military service had begun and he had completed basic training and advanced or special weapon training is no ground to deny him discharge * * * if in reality his views are sincerely held and are the result of religious training and belief."

It was a combination of several factors, petitioner claimed, that combined to cause his ultimate "crystallization." First, when he was called upon to teach plebes the use of the bayonet, he found himself thinking "somber thoughts." Secondly, the Vietnam moratorium of that fall and news of the My Lai incident "both had a profound effect" on him. Finally, the news that one of the boys with whom he had gone to high school was killed in Vietnam made him realize that people really die in wars. A number of those with intimate contacts with Donham certified to the sincerity and depth of his evolving scruples of conscience.

■ In accord with Army regulations, petitioner was interviewed by a chaplain, a psychiatrist, and an Army officer. Both the chaplain and the psychiatrist expressed the view that petitioner was sincere in his convictions and a man of integrity. The Army officer, Lt. Col. Gleason, however, felt quite differently. Colonel Gleason's major concern was the fact that petitioner had waited until after final examinations his third year to file his application, even though he admitted that his beliefs against war had crystallized at least several months earlier. At his interview with Colonel Gleason, petitioner candidly admitted that he waited until after final examinations because "I did not know whether I would be permitted to finish the school year." Judge Frankel concluded that the Army's decision had a basis in fact, since, "while petitioner postponed disclosure, he continued to serve in an establishment and learn and teach things he then claimed to find intolerable as a matter of conscience and basic conviction." We agree that this provided a basis in fact for the Army's decision. However, the Army's determination can stand only if it was arrived at in pursuance of the law and regulations, and there we differ with the court below.

Department of Defense Directive 1300.6 VI.B.4 requires the hearing officer who hears the applicant requesting discharge to be "knowledgeable in policies and procedures relating to conscientious objector matters." Petitioner cites numerous instances of Colonel Gleason's total lack of knowledge concerning conscientious objection. He found that the applicant's religion must advocate conscientious objection, although this had apparently not been the law since the First World War. He was not aware of the elimination of religious requirements for conscientious objection. Moreover, Colonel Gleason apparently lacked the necessary objectivity to be a fair, knowledgeable hearing officer. He obviously and no doubt honestly could not believe that a West Point cadet could possibly develop conscientious scruples against war and assumed more the role of advocate than judge.

The government argues, however, that Colonel Gleason was not the one to make the final decision on petitioner's application. Further, that those making the ultimate decision disregarded Colonel Gleason's findings concerning petitioner's lack of religious convictions and concerning his opposition to the Vietnam war, as opposed to all war. Yet if all three officers who had seen and heard petitioner (i. e., the psychiatrist and the chaplain who interviewed him and the hearing officer who observed him) had found petitioner sincere, the Army would have been hard pressed to justify its finding of insincerity (cf. United States ex rel. Tobias v. Laird, 413 F.2d 936 (4 Cir. 1969)), where the court, in overturning the Army's refusal to discharge the petitioner on conscientious objector grounds, emphasized that all three officers making recommendations recommended classification as a conscientious objector. "We think the Army's own directives demonstrate a policy of reasonable common sense fairness to its soldiers—which policy has not been followed in this case." 413 F.2d at 940. See also, United States ex rel. Brooks v. Clifford, 409 F.2d 700, 706 (4 Cir. 1969): "Such regulations [for discharge of conscientious objectors] once issued must be followed scrupulously."

Moreover, the failure to include a recommendation by Donham's unit commanding officer was violative of the Army's own regulations, which provide that recommendations will be forwarded to department headquarters. The unit commander is required by regulation (Army Regulation 635-20 ¶4.b(4) 1.) to make a recommendation. Major Baker, petitioner's tactical officer (who petitioner contends is the unit commander) failed to make the required recommendation, though he submitted the reports of the chaplain and psychiatrist and other required forms. The government contends that the petitioner's unit commander for the purposes of the regulations was the commandant of cadets or the superintendent of West Point, who did make the appropriate recommendations.

■ Petitioner's contention appears to us correct. While 10 U.S.C. § 4334(b) and (c) provide that the superintendent is the commanding officer of the Academy and of the military post at West Point, and that the commandant of cadets is the immediate commander of the Corps of Cadets, § 4349(a) provides that the Corps of Cadets shall be divided into companies and that each company shall be commanded by a commissioned officer of the Army. For the purpose of the regulation the unit commander would appear to be the company commander. The obvious purpose of the regulation requiring a recommendation from the unit commander is to obtain an opinion from someone in close personal contact with the applicant. Clearly the company commander is in a far better position for this than the commandant who has the entire Corps of Cadets under his general supervision. The company commander's recommendation should be obtained and a hearing officer knowledgeable in accordance with regulations appointed.

We reverse and remand with instructions to stay Donham's orders to active military duty pending further proceedings by the Army in accord herewith.