Scott H. BORTREE, Appellant,

v.

Stanley R. RESOR, Secretary of the Army et al.

No. 24607.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 6, 1970.

Decided March 2, 1971.

Mr. Sanford Kahn, Philadelphia, Pa., of the bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of Court, with whom Mr. Lawrence Speiser, Washington, D. C., was on the brief, for appellant.

Mr. John T. Kotelly, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and TAMM, Circuit Judges.

TAMM, Circuit Judge:

The sole issue presented in this case is whether there is any basis in fact for the Army's disapproval of Private Scott H. Bortree's application for discharge as a conscientious objector.[1] The Army concluded that Bortree was not opposed to participation in war in any form as required under Department of Defense Directive 1300.6, issued May 10, 1968, and Army Regulation No. 635–20, issued January 22, 1969, and the District Court upheld this determination in denying Bortree habeas corpus relief. For the reasons set forth below, we hold that there was no factual basis for the Army's action. Accordingly, we reverse.

## I.

Appellant Bortree enlisted in the Army in March of 1969 and requested

---

1. The "basis in fact" test was enunciated in Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946) and applied in the context of conscientious objection in United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). It is now contained in the Military Selective Service Act of 1967, 50 U.S.C.App. § 451 et seq. (1968), which authorizes judicial inquiry into draft classifications "only when there is no basis in fact for the classification assigned to such registrant." 50 U.S.C. App. § 460(b) (3) (1968).

assignment as a refrigerator repairman. After completing basic training and refrigeration equipment repair school, Bortree was ordered to report to the Overseas Replacement Station at Fort Dix, New Jersey, to await shipment to Viet Nam. When appellant reported to Fort Dix as ordered, he submitted an application for discharge as a conscientious objector pursuant to AR 635–20 § 4a. The application included his statement of the beliefs which formed the basis for his claim of conscientious objection and four letters supporting his claim. In his statement Bortree wrote that he believed "he should not willfully kill or inflict injury on my fellow man at any time for any reason, or support the killing and injury of mankind in any way." (Government Exhibit A-17.) He claimed that these beliefs "were formed in church and Sunday school" and were nurtured by his parents and by his experiences in the Boy Scouts. (*Id.*)

Shortly after he submitted his application appellant was interviewed by Chaplain William W. Erbach in accordance with AR 635–20 § 4c. In his report of this interview Chaplain Erbach found appellant's "concern about not taking another's life deep and abiding." (Government Exhibit A-21.) With regard to the question whether Bortree was opposed to war in any form, Chaplain Erbach stated:

> [H]e feels that any participation by him in the combat zone would mean he would be directly supporting the killing that is going on and this is contrary to his belief. He admitted that he was supporting the war thru payment of taxes, that he would be willing to serve in other areas of the world but not in Vietnam. I deduct from this that he would support the military mission from a remote standpoint but personal involvement would be out of the question.

(*Id.*) Having concluded that Bortree was opposed only to participation in war in the combat zone, Chaplain Erbach recommended that Bortree's application be disapproved.

Bortree then appeared before Captain Thomas M. Duszynski for an interview prescribed by AR 635–20 § 4d. On the basis of this interview Captain Duszynski concluded that Bortree was a conscientious objector. In his statement he said:

> I discussed with him the fact that he had a noncombatant MOS and that he could fulfill his military obligations and satisfy his conscience with regard to bearing arms while serving in the MOS. Private Bortree stated that his presence in the Military Service forced others to bear arms and indirectly would support the killing.

(Government Exhibit A-23.)

Bortree next appeared before Major Paul A. Buttenweiser, a psychiatrist, for a psychiatric evaluation. Although Major Buttenweiser did not make a recommendation concerning appellant's claim of conscientious objection, he did make comments bearing upon this issue in the report of the interview. Thus, Major Buttenweiser wrote:

> He admitted candidly that he was pushed to this decision by virtue of getting orders to Vietnam, feeling this might necessitate his killing another person.

(Government Exhibit A-32.) He also commented that Bortree "appeared sincere and forthright in his responses during the interview." (*Id.*)

In the meantime Bortree had learned of Chaplain Erbach's statement concerning their interview. In an effort to correct what he felt to be a misinterpretation, he submitted an affidavit containing the following statement:

> I, Scott H. Bortree, 174–40–8062, at this time would like to clear up what I feel is a gross misunderstanding and/or interpretation. It concerns a statement made in Captain Erback's [*sic*] report. He stated that I would be willing to serve in the military in other areas of the world besides Vietnam. This is most definitely not my position now, nor has it been since I filed as a Conscience [*sic*] Objector.

I feel very strongly that I can no longer serve in any way in any military organization anywhere.

(Government Exhibit A-36.)

In response to this affidavit, Chaplain Erbach submitted a statement in which he gave the following account, from memory, of a portion of his interview with Bortree:

> *Erbach:* Well, how about if you were still in the States or if you were to go to Germany even, would you serve your time out then?
>
> *Bortree:* Well, I don't know, I suppose that I wouldn't have been faced with this decision.
>
> *Erbach:* But what if war was to break out in Germany while you were there?
>
> *Bortree:* There isn't any there now.
>
> *Erbach:* I know that but what if you were there when it did?
>
> *Bortree:* I don't know, I guess I'd have to face that then.

(Government Exhibit A-37.) Chaplain Erbach then said that he based his conclusion that Bortree was willing to serve elsewhere than Viet Nam not upon any direct statement to that effect but upon the conversation quoted above and "other inferences." (*Id.*) In support of his conclusion Chaplain Erbach quoted Major Buttenweiser's statement that Bortree admitted being "pushed" into applying for conscientious objector status "by virtue of getting order for Viet Nam. * * * *" (*Id.*) Chaplain Erbach also stated that Chaplain Lawrence Gibbons was present during his interview with Bortree and "got the same impression as I did from the conversation with Pvt. Bortree * * * *" (Government Exhibit A-38.) Chaplain Gibbons submitted a separate statement in which he wrote:

> Let me point out, since there is some doubt as to the accuracy of Ch. Erbach's statement found in paragraph 3 stating that "* * * he (Pvt. Bortree) would be willing to serve in other areas of the world but not in Viet Nam.", that I was present at the interview which prompted this statement by Ch. Erbach and recall also that at the time the applicant portrayed the belief that had he been asked to serve elswhere he might not have had to file for a CO discharge.

(Government Exhibit A-40.)

The next occurrence in this lengthy chain of events was yet another interview. The Army had discovered that Captain Duszynski was in Bortree's chain of command and was therefore ineligible to serve as a hearing officer under AR 635–20 § 4d. Consequently, Bortree was interviewed again, this time by Captain H. J. Witko. He found Bortree to be sincere and felt that he "strongly oppose[d] participation in war in any form." (Government Exhibit A-41.) Accordingly, he recommended that Bortree's application be approved.

Although officers in Bortree's chain of command could not serve as his hearing officers under AR 635–20 § 4d, several of them were requested to comment on the merits of appellant's claim of conscientious objection. (*Id.*) Captain Kenneth S. Nadwodny, Bortree's unit commanding officer at Fort Dix, recommended disapproval of appellant's application because he felt Bortree's primary motivation was "his fear of going to a combat zone." (Government Exhibit A-15.) Four other officers also submitted statements recommending disapproval of Bortree's application. (Government Exhibits A-7, A-9 to -11.) Neither Captain Nadwodny nor any of these other officers interviewed Bortree concerning his beliefs. Thus, of the officers in Bortree's chain of command who commented upon his application, only Captain Duszynski, whose statement remained in appellant's file, conducted such an interview.

The file which was finally submitted to Headquarters, Department of the Army, contained all the documents mentioned above. On the basis of this file, the Class 1–0 Conscientious Objector Review Board disapproved Bortree's appli-

cation on the ground that he was "not opposed to participation in war in any form" and set forth the facts and reasons which led it to this conclusion. (Government Exhibits A-3 to -6.) Appellant was subsequently notifed of the Army's decision.

## II.

The problem of ascertaining whether there is a basis in fact for the Army's denial of Bortree's application is a most difficult one because the ultimate fact in question is a subjective belief of which there is very little objective evidence. We will, of course, examine what objective evidence there is to determine whether it is consistent with the Army's decision. In accordance with the teachings of Witmer v. United States, 348 U. S. 375, 75 S.Ct. 42, 99 L.Ed. 640 (1955), we will also consider the impressions of those who submitted statements concerning Bortree's beliefs and the inferences which may logically be drawn from facts appearing in the record. If, after studying the entire record, we find any evidence, objective or subjective, which the Army could rationally have relied upon in denying Bortree's application, we must sustain this action. *E. g.,* United States v. Hesse, 417 F.2d 141, 144 (8th Cir. 1969).

The evidence upon which the Conscientious Objector Review Board seems to have relied most heavily was the statement of Chaplain Erbach, particularly his account and interpretation of the remarks Bortree made during their interview as to whether he would have to apply for a discharge if he were not being sent to Viet Nam. Chaplain Erbach interpreted these remarks to mean that Bortree was opposed only to participation in war in the combat zone. While these statements will bear this interpretation, we feel they are more consistent with Bortree's explanation that he meant to say only that his opposition to *any* form of participation in war might not have crystallized had he not

been ordered to Viet Nam. As Chaplain Erbach remembers the conversation, Bortree made the following comment in response to a somewhat confusingly worded question as to whether he would have to seek discharge as a conscientious objector if assigned to Germany:

> Well, I don't know, I suppose that I *wouldn't have been faced* with this decision.

(Government Exhibit A-37) (Emphasis added.) The verb tense used by Bortree and his expression of doubt as to whether he would have served in Germany seem more compatible with his explanation that his views *might* not have crystallized *had* he been asked to serve elsewhere than in Viet Nam than with Chaplain Erbach's conclusion that he *was* willing to serve in any country in which he wouldn't be directly involved in war. The statements of Chaplain Gibbons and Major Buttenweiser provide little support for Chaplain Erbach's interpretation. Chaplain Gibbons recalled that Bortree "portrayed the belief that *had* he been asked to serve elsewhere he *might* not have *had* to file for a CO discharge." (Government Exhibit A-40) (Emphasis added.) This recollection of Bortree's remarks is very similar to Chaplain Erbach's; thus, it, too, seems to support Bortree's explanation of these remarks. Bortree's "admission" to Major Buttenweiser that the prospect of having to go to Viet Nam and kill other men "pushed" him to apply for conscientious objector status does not necessarily indicate the substance of Bortree's beliefs. It seems likely that Bortree was simply stating the reasons why his beliefs crystallized. In contrast to the ambiguous statements on which Chaplain Erbach relied, there are several indications that Bortree was opposed to both direct and indirect support of war. Bortree professed this belief in his application and his affidavit, and both Captain Duszynski and Major Witko found on the basis of their interviews with him that he evinced a sincere oppo-

sition to any form of war.[2] In view of these statements, we find Bortree's explanation of his remarks to Chaplain Erbach quite persuasive.

■ Another consideration which leads us to question Chaplain Erbach's interpretation of these remarks is that he seemed unable or unwilling to recognize that Bortree's explanation was a possible one. In his first statement the Chaplain said that Bortree "admitted" that he would be willing to serve elsewhere than in Viet Nam. (Government Exhibit A-21.) The Chaplain's use of the word "admitted" suggests that he thought his interpretation of Bortree's remarks was manifest from the remarks. In his second statement the Chaplain indicated that Bortree must have revised his thinking and language concerning his willingness to serve in Viet Nam by the time he spoke to Captain Duszynski. (Government Exhibit A-38 to -39.) This is by no means clear, however, because the statements of Captain Duszynski and Major Witko are compatible with the remarks the Chaplain set forth from his interview with Bortree. It is also noteworthy that Chaplain Erbach's opinion of Bortree's sincerity seems to have been influenced adversely by Bortree's assertion in his affidavit that he was opposed to any form of participation in war. In his first statement, although he made a somewhat ambiguous comment to the effect that some of Bortree's thoughts on the morality of war were not his own, Chaplain Erbach did find that Bortree had for some time been concerned about killing his fellow man and that this concern had developed into an opposition to participation in war in the combat zone. (Government Exhibit A-21.) Chaplain Erbach's conclusion that Bortree was not opposed to indirect support of war thus seems to have been based primarily on his interpretation of Bortree's remarks on this subject and not on an observation that Bortree was insincere during the interview. Later, however, when Bortree offered another explanation of these remarks in his affidavit, the Chaplain apparently doubted his sincerity.[3] The logical implication of this and the other occurrences mentioned in this paragraph is that Chaplain Erbach did not realize that the remarks made by Bortree which he reproduced in his second statement were consistent with the beliefs Bortree professed in his affidavit and elsewhere.

■ Counsel for the Army offers another explanation for these occurrences. He suggests that the remarks which Chaplain Erbach set forth in his second statement may not have been the only ones on which the Chaplain relied, that other remarks may have clarified the conversation and indicated that the Chaplain's interpretation was correct. (Oral Argument, Nov. 6, 1970.) There is, however, no logical or legal reason why we should imply that these other remarks were made, as the Army would obviously like us to do. It would be completely irrational for us to suppose that although Chaplain Erbach set forth a portion of his interview with Bortree, he did not include those statements which were most indicative of Bortree's willingness to indirectly support war. Moreover, were we to infer statements

2. In his second statement Chaplain Erbach contends that Bortree must have revised his remarks somewhat by the time he spoke with Captain Duszynski. We discuss this contention in the next paragraph of our opinion.

3. In contending that Chaplain Erbach's apparent conclusion that Bortree was insincere is entitled to great weight, Counsel for the Army makes much of the fact that "[t]he Chaplain had an opportunity to observe appellant in person and was entitled to draw conclusions from appellant's demeanor as he presented his views." (Brief for the Government at 9.) However, because the Chaplain seems to have found that Bortree *was* sincere during their interview and to have questioned his sincerity *only* after receiving his affidavit, we feel this argument misses the mark. Chaplain Erbach did talk to Bortree again after the affidavit was submitted, but the Chaplain did not indicate that Bortree appeared insincere at this time either.

sufficient to support Chaplain Erbach's recommendation, we would make a farce of our review because we would be fashioning a basis in fact for the Army's decision when there may be none. *See* Browning v. Laird, 323 F.Supp. 661, 664–665 (N.D.Cal.1969). *Cf.* United States v. James, 417 F.2d 826, 831–832 (4th Cir. 1969). Accordingly, in determining whether Chaplain Erbach's recommendation is grounded in fact, we look only to the remarks from his interview with Bortree which he reproduced in his second statement. For the reasons given above, we find these remarks, as well as the admission which Bortree made to Major Buttenweiser, too ambiguous to support the conclusion that Bortree was not opposed to participation in war in any form.

■ Chaplain Erbach also drew inferences supporting his recommendation from certain facts in the record. We find some of these inferences so questionable as to cast doubt upon the Chaplain's knowledge of conscientious objector matters. One such inference drawn by the Chaplain was that since Bortree had been supporting the war in Viet Nam indirectly by paying taxes, he presumably was not opposed to another form of indirect support, *i. e.*, serving in a country other than Viet Nam. (Government Exhibit A-21.) We, on the other hand, feel it is quite obvious that an individual could draw a moral distinction between paying taxes and serving in the Army. Chaplain Erbach also said that there was nothing in Bortree's religious background which would give rise to his professed opposition to any form of participation in war. (Government Exhibit A-38.) In commenting specifically on the Boy Scout training which Bortree said formed part of the basis for his beliefs, the Chaplain said that, rather than encouraging young men not to serve in the military, the Boy Scouts organization urges them to serve their country. (*Id.*) Although we certainly do not dispute the truism that Boy Scout training is designed to instill the salutary principle of service "to God and Country," we nonetheless feel the religious aspects of this training could contribute to the convictions Bortree claims he holds. With regard to Chaplain Erbach's general statement that there was nothing in Bortree's religious background to warrant these convictions, we feel that appellant's participation in the Boy Scouts and his regular attendance at church for several years would be sufficient to instill strong moral beliefs. Chaplain Erbach himself thought that Bortree was opposed to direct support of war in the combat zone (Government Exhibit A-21), and it is difficult for us to understand how the Chaplain could conclude that this belief could have developed from Bortree's earlier spiritual experiences while opposition to participation in war in any form could not.

There are, however, other possible inferences to be considered. These arise, at least arguably, from Chaplain Erbach's observation that some of Bortree's thoughts were not his own (Government Exhibits A-21, A-38), from Bortree's statement in his application that "[t]he Army has now ordered me * * * to directly support the destruction of a foreign country and its people" (Government Exhibits A-17 to -18), and from the fact that Bortree did not apply for conscientious objector status until he received orders to report to Viet Nam.

■ We feel Chaplain Erbach's observation concerning Bortree's thoughts is a particularly weak indication that Bortree is not sincerely opposed to any form of participation in war. An inference of insincerity could logically be drawn from the fact that an applicant for conscientious objector status expresses beliefs in a way which clearly indicates that he is not familiar with them. However, many sincere young men use language derived from their reading and from their moral and spiritual advisers to express their beliefs, and in so doing may give the impression that their thoughts are not their own. Because of this phenomenon, Selective Service Boards and the Army must exercise great care if they attempt to draw con-

clusions from the manner in which an applicant phrases his beliefs.[4] We do not believe such care was taken here. In his first statement Chaplain Erbach merely stated that some of Bortree's thinking was not his own but was prompted by outside associations (Government Exhibit A-21); he gave no specifics to support this assertion. Moreover, he apparently did not consider his observation very significant, for it did not prevent him from finding that Bortree was opposed to participation in war in the combat zone. In his second statement the Chaplain said that events subsequent to his interview with Bortree had reinforced his earlier conclusion that some of Bortree's counsellors had influenced his thinking. (Government Exhibits A-38 to -39.) However, the events referred to by the Chaplain tend to show that he did not completely understand the statements Bortree made to him concerning his willingness to serve elsewhere than in Viet Nam rather than that Bortree's advisors caused him to revise his thoughts and statements on the subject of indirect support of war.[5] The basis for Chaplain Erbach's observation that some of Bortree's thoughts were not his own was thus very questionable, and we believe the Army should have ignored it in passing upon his application.

■ We also feel it would be improper to draw an inference contrary to Bortree's claim from his statement in his application that he was being ordered to directly support war. This statement comes at the end of Bortree's discussion of the events which caused his views to crystallize. It was obviously intended to explain this process, not the nature of his beliefs. Earlier he stated his beliefs as follows:

> I feel I should not willfully kill or inflict injury on my fellow men at any time for any reason, or support the killing and injury of mankind *in any way*.

(Government Exhibit A-17) (Emphasis added.) Moreover, immediately after the statement dealing with direct support of war, Bortree wrote:

> I can no longer remain in the army if I expect to live by my values or my conscience.

(Government Exhibit A-18.) In these circumstances we believe it is impermissible to infer from Bortree's brief reference to direct support of war that he was opposed only to that form of participation in war. *See* Browning v. Laird, *supra*, 323 F.Supp. at 665.

■ The fact that Bortree did not submit his application until he was ordered to Viet Nam does, in the abstract, suggest insincerity on his part, but this fact is not sufficient in itself to sustain the Army's denial of a claim of conscientious objection.[6] United States ex rel. Tobias v. Laird, 413 F.2d 936, 939–940 (4th Cir. 1969); Ross v. McLaughlin,

4. Thus, in Capobianco v. Laird, 424 F.2d 1304, 1306 (2d Cir. 1970), petition for cert. filed, 39 U.S.L.W. 3085 (U.S. Aug. 8, 1970) (No. 611), the court refused to allow the inference that the applicant's application for conscientious objector status was "ghost-written" in view of the fact that it seemed to be "within the range of his learning and ability." In United States v. Corliss, 280 F.2d 808, 815–816 (2d Cir.), cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960), the court did hold that it was permissible for a local Selective Service board to infer that some of Corliss' thoughts were not his own, but in that case there were facts in the record which supported this inference.

5. These events were Bortree's submittal of his affidavit and Captain Duszynski's submittal of his statement and recommendation. Earlier in our opinion we explained that these documents do not necessarily, or even logically, indicate that Bortree revised his thinking concerning his willingness to serve elsewhere than in Viet Nam.

6. It should be noted that in Witmer v. United States, *supra*, 375 U.S. at 383, 75 S.Ct. 42, the Supreme Court suggested that some inferences of insincerity, standing alone, would not be sufficient to provide a basis in fact for denial of a claim of conscientious objection.

308 F.Supp. 1019, 1024 (E.D.Va.1970). In Bortree's case, any inference of insincerity to be drawn from his failure to submit his application until he was ordered to Viet Nam could only be a very weak one. The evidence of Bortree's sincerity is quite extensive; Captain Duszynski, Major Witko, and Major Buttenweiser all felt he was sincere, and Chaplain Erbach apparently found him to be sincere at least during their interview. (*See* note 3 *supra,* and accompanying text.) There is even more proof that Bortree's opposition to war was not a sudden development but had been growing for some time. For example, Chaplain Erbach felt that Bortree had enlisted in the Army because he did not want to have to kill his fellow man and thought that by enlisting he could obtain a job that did not involve combat. (Government Exhibit A-21.) The Chaplain also believed that Bortree's opposition to killing and to war had increased while he was in the service. (*Id.*) In this context we find Bortree's explanation that his views crystallized when he was ordered to Viet Nam quite plausible, and we feel something more than the mere timing of his application is necessary to demonstrate that he was insincere.

The only other evidence which arguably provides a basis in fact for the Army's decision is that provided by the statements of Captain Nadwodny and the other officers in Bortree's chain of command who recommended disapproval of his application. These statements are also insufficient to sustain the decision. They contain mere conclusions, with no explanations as to how the conclusions were reached; consequently, we cannot be sure that there was any factual basis for the recommendations made. *See* Browning v. Laird, *supra,* 323 F.Supp. at 665. Moreover, all indications are that these officers did not have legally sufficient grounds for their recommendations. Captain Nadwodny was Bortree's unit commanding officer at Fort Dix and presumably had some contact with him, but he did not interview Bortree concerning his application for discharge. Because an individual's beliefs as to the morality of participation in war are so very difficult to ascertain, we believe it is doubtful that Captain Nadwodny could have formed a reasoned opinion concerning Bortree's beliefs on this subject without questioning him extensively about them.[7] The unique substance of Captain Nadwodny's statement also lends support to the conclusion that he did not have an adequate opportunity to evaluate Bortree's beliefs, and, not incidentally, provides another reason why his recommendation should have been rejected. Captain Nadwodny felt Bortree was motivated primarily by his fear of combat (Government Exhibit A-15); none of the other officers who commented upon Bortree's application even mentioned this factor. The other officers in Bortree's chain of command who recommended disapproval of his application had even less opportunity to form a judgment as to his beliefs than did Captain Nadwodny. They did not interview Bortree and there is no indication that they had any acquaintance with him. Their recommendations thus seem to have been based solely on the facts and observations appearing in Bortree's file, and, as we have indicated, these do not support the conclusion that Bortree was not opposed to participation in war in any form.

Because there was no basis in fact for the Army's action, we reverse the decision below and remand the case to the District Court with the instruction that the writ of habeas corpus is to be granted.

Reversed and remanded.

---

7. In prescribing three interviews for each applicant for conscientious objector status (AR 635-20 § 4), the Army itself seems to recognize that such questioning is necessary.