488 F.2d 1386
 Martin E. FERRAND, Petitioner-Appellant,
v.
Robert C. SEAMANS, Jr., Secretary of the Air Force, and Col.
Lewis R. Barrett, Jr., Commanding Officer,
Headquarters Air Reserve Personnel
Center, Denver, Colorado,
Respondents-Appellees.
 No. 95, Docket 73-1546.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 19, 1973.
Decided Dec. 13, 1973.
 
 Joan Goldberg, New York City (Rabinowitz, Boudin & Standard, New York City), for petitioner-appellant.
 Joseph P. Marro, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., for the Southern District of New York, David P. Land, Asst. U. S. Atty., of counsel), for respondents-appellees.
 Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 The petitioner-appellant, Martin E. Ferrand, is a doctor of medicine and a Captain in the United States Air Force Reserve. His undergraduate work was at Spring Hill College, a Jesuit institution, in Mobile, Alabama, where he enrolled for a time in the Reserve Officer Training Corps (ROTC). He then attended Louisiana State University Graduate School for one year before entering its Medical School, from which he graduated in 1967. In November, 1967, he received a Commission as a First Lieutenant in United States Air Force Reserve pursuant to the Berry Plan. The Plan permitted Ferrand both exemption from the draft and postponement of active military duty until his medical studies were completed. Thus he was able to serve as a resident in psychiatry at Mt. Sinai Hospital from 1968 to 1970, and as a resident in child psychiatry from 1970 to 1972.
 
 
 2
 Ferrand, who had been promoted to Captain on June 3, 1970, was advised by the Air Force in September, 1971 that he would be called to active duty in 1972. In October, 1971, he wrote to the Air Force requesting information permitting him to apply for the status of conscientious objector. On December 2, 1971, Ferrand tendered his resignation by reason of conscientious objection and, on December 10, 1971, he made formal application for C.O. status. As will be more fully developed hereafter, Ferrand proceeded through the appropriate administrative channels until ultimately, on April 17, 1972, the Secretary of the Air Force declined to classify him as a conscientious objector within the meaning of A.F.R. 35-24, 32 C.F.R. Sec. 888e. On August 11, 1972, a petition for a writ of habeas corpus, as well as a motion for a preliminary injunction staying petitioner's orders, was filed in the United States District Court, Southern District of New York. The matter was argued on October 12, 1972 before Hon. Sylvester J. Ryan, who rendered his decision on October 17, 1972, upholding the denial of the petitioner's application for discharge as a conscientious objector. This appeal followed from the order entered in the Southern District Court on April 10, 1973.
 
 
 3
 * In his decision below, Judge Ryan found that Ferrand's application for discharge as a conscientious objector after a deferment of four years put his sincerity in issue, and, further, that his approval of a police force for the protection of society created a basis in fact for the denial of the application.
 
 
 4
 The regulation which provides for the discharge of in-service conscientious objectors who are members of the Air Force is A.F.R. 35-24, 32 C.F.R. Sec. 888e, which, in the pertinent section 2(a), requires that the applicant establish that he has "[a] firm, fixed, and sincere objection to participation in war in any form or the bearing of arms by reason of religious training and belief."
 
 
 5
 Ferrand's application for discharge sets forth in considerable detail his conscientious objection to war based, initially at least, upon his Roman Catholic educational background, but eventually upon his own individual religious and ethical tenets. He asserted that his conscientious objector beliefs did not finally crystallize until he was faced with the reality of active service. While he recognized that as a psychiatrist he would probably not be put in the position of having to kill a fellow human being, he stated that he could not in conscience treat a soldier attempting to carry out goals which he considered to be morally wrong. His application was supported by letters from his mother, his cousin who is a Roman Catholic priest, two doctors who are personal friends, as well as a psychiatrist, all of whom attested to the sincerity of his convictions as a conscientious objector to war.
 
 
 6
 Pursuant to regulation, Ferrand was interviewed by a Chaplain, Lt. H. I. Ratcliffe, Jr., of the Naval Hospital at St. Albans, New York. The purpose of the interview was to determine his sincerity and the depth of his convictions. Chaplain Ratcliffe concluded:
 
 
 7
 Overall, I feel that Dr. Ferrand is quite sincere in his convictions and that he is indeed a conscientious objector to war and service in any organization that participates in the same.
 
 
 8
 He also considered that Ferrand would be an excellent candidate for alternate service in a public child care agency. Although Ferrand preferred to remain in the New York area, he expressed willingness to serve any place in the country, which the chaplain believed to be indicative of his integrity.
 
 
 9
 Ferrand was also interviewed by Lt. Col. J. Derascavage, who was the investigating officer. His findings were that Ferrand was opposed to all wars, and that he did not believe there was such a thing as a just war, particularly in the nuclear age. He stated that Ferrand's "behavior and comments during the entire interview reflected deep sincerity in his beliefs that war and killing cannot be justified." Based on Ferrand's written statement and the personal interview, Col. Derascavage
 
 
 10
 highly recommend[ed] that his application for conscientious objector be approved. His replies to all questions reflected profound sincerity in his beliefs that war or killing cannot be justified, and I am convinced that it would be an injustice to force someone to serve a cause which he feels is completely wrong.
 
 
 11
 On February 14, 1972, Col. Mack E. Schwing, Staff Judge Advocate, also recommended that the application be approved since a prima facie case of sincerity was supported by the record and those persons who personally interviewed him. He found there was "no 'basis in fact' upon which to base denial." Thereafter, on February 22, 1972, the Deputy Director of the Directorate of Personnel Actions also recommended approval. However, on February 25, 1972, the Surgeon General's office recommended disapproval. Col. John R. Green, who made the recommendation, did not doubt Ferrand's sincerity, noting that he had had a belief in non-violence since high school. He further found that his decision to apply for conscientious objector status was not crystallized until he was informed in September, 1971 that he was being called to active duty. His concluding paragraph is perhaps instructive:
 
 
 12
 He received the benefits of the Berry Plan in completing his residency training without fear of being drafted; therefore, under the contract he signed, he should be called to active duty to complete his obligation.
 
 
 13
 Despite this unfavorable recommendation, both the Command Chaplain, on March 1, 1972, and the Directorate of Personnel Program Actions, on March 15, 1972, recommended approval. The Command Chaplain, while commenting that a person who obtains a deferred status in order to pursue postgraduate studies is always suspect of insincerity, was nonetheless persuaded by the fact that the chaplain and the hearing officer who had interviewed Ferrand had found that he was sincere, and he felt compelled to concur in their judgment. The Directorate of Personnel Program Actions concluded:
 
 
 14
 Based on a thorough review of the file, it appears that his asserted beliefs are honestly and genuinely held. The officer's personal history reveals views and actions strong enough to demonstrate that expediency or avoidance of military service is not the basis of his claim. We believe he meets the criteria for classification as a conscientious objector and recommend approval of his resignation.
 
 
 15
 The final administrative review within A.F.R. 35-24 consisted of the decision of the Secretary of the Air Force denying Ferrand C.O. status on April 17, 1972, based upon an adverse recommendation of the Air Force Personnel Board submitted on March 31, 1972. The concluding paragraph of that recommendation states:
 
 
 16
 [I]t is our considered opinion, notwithstanding the fact that of all the forwarding agencies and individuals only the Surgeon General has seen fit to recommend disapproval, that Captain Ferrand has not reasonably established that he is opposed to participation in war in any form or that his limited opposition, which can be properly viewed as resting on considerations of expediency, is held with the strength and devotion of traditional religious convictions. Accordingly, we recommend disapproval of his claim to CO status.
 
 II
 
 17
 There is no question but that the standard of review to apply here is the narrow "no basis in fact" standard used on judicial review of Selective Service classifications. United States ex rel. Donham v. Resor, 436 F.2d 751, 753 (2d Cir. 1971); Hammond v. Lenfest, 398 F.2d 705, 716 (2d Cir. 1968). With respect to the question of expediency, even under this limited review, "[w]here the applicant has stated his beliefs with apparent sincerity and no adverse demeanor evidence has been introduced, the Conscientious Objection Review Board must predicate any finding of insincerity upon objective evidence affording a rational basis for the Board's refusal to accept the validity of the applicant's claims." LoVallo v. Resor, 443 F.2d 1262, 1264 (2d Cir. 1971).
 
 
 18
 The principal basis here for the conclusion that Ferrand was insincere was the fact that he did not apply for C.O. status until he had completed his residency and had avoided Selective Service for a four-year period. While Ferrand's late application may be the basis for some surmise or suspicion of his sincerity, this alone does not provide a basis in fact for the action taken. Dietrich v. Tarleton, 154 U.S.App.D.C. 47, 473 F.2d 177, 179 (1972); Arlen v. Laird, 345 F.Supp. 181, 185 (S.D.N.Y. 1972); see United States v. Gearey, 368 F.2d 144, 149-150 (2d Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L. Ed.2d 368 (1967). Moreover, great weight must be accorded to favorable observations and recommendations of sincerity submitted by officers who have, pursuant to regulation, personally interviewed a conscientious objector applicant. See United States ex rel. Donham v. Resor, supra, 436 F.2d at 754. It is most significant here that every officer who interviewed Ferrand attested to his sincerity, and all were obviously familiar with the timing of his application for C.O. status. We of course cannot subscribe to the position of the Surgeon General that a beneficiary of the Berry Plan who succeeds in escaping the draft should merely on that account be called to active duty under the terms of his contract. This would leave no room at all for in-service conscientious objection. The evidence in Ferrand's record overwhelmingly displays his sincerity, and we find no basis in fact at all to support the proposition that his application was provoked by expediency.
 
 
 19
 The finding below that a basis in fact exists because of Ferrand's approval of the use of force in some limited circumstances is erroneous as a matter of law. Ferrand stated:
 
 
 20
 I am not opposed to a police force or a proper use of force by these men. Their function is to restrain the guilty; the army's is to kill the "enemy."
 
 
 21
 It is clear that the use of force to restrain wrongdoing does not preclude a conscientious objection toward war. United States v. Purvis, 403 F.2d 555, 563 (2d Cir. 1963). A fortiori, the Air Force determination that Ferrand is not conscientiously opposed to participation in war because he believes in the application of chemical and physical restraints upon patients must be rejected as a basis in fact. Ferrand admitted his willingness to restrain someone "who is to [sic] confused or irrational to talk with me," and he explained that this "does not threaten lives, or make them or me less than human." It is beyond cavil that his willingness to exert protective force is not at all tantamount to an admission that he could participate in some wars. United States v. St. Clair, 293 F.Supp. 337, 343-344 (E.D.N.Y. 1968).
 
 
 22
 In its discussion of Ferrand's opposition to war, the Air Force Personnel Board referred to Ferrand's purported belief in the concept of a just war. A reading of his statement in fact indicates his personal repudiation of that doctrine. He states:
 
 
 23
 I know that since the time of St. Augustine the Catholic Church has recognized the concept of a "just war." But today many theologians now feel that such a concept is impossible, for in modern times the outcome would negate any value war may have for man.
 
 
 24
 He further cited Pope John XXIII's encyclical letter Pacem in Terris, in which he stated that it was irrational today to believe that war is an apt means of vindicating violated rights. Obviously, whether or not Ferrand's views are in accord with traditional religious tenets of the Roman Catholic Church is not germane. "If an individual deeply and sincerely holds beliefs that are purely ethical and moral in source and content but that nevertheless impose upon him a duty of conscience to refrain from participating in any war at any time, . . . such an individual is as much entitled to a 'religious' conscientious objector exemption under Sec. 6(j) as someone who derives his conscientious opposition to war from traditional religious convictions." Welsh v. United States, 398 U.S. 333, 340, 90 S.Ct. 1792, 1796, 26 L.Ed.2d 308 (1970).
 
 
 25
 We find the argument that petitioner's objection is limited to nuclear encounters without basis in the record. While he does make reference to Pope John XXIII's abhorrence of thermonuclear war, his own objection is not so limited. In his application for discharge Ferrand stated:
 
 
 26
 I believe that war is wrong. . . .
 
 
 27
 I believe that everyone should have the right to his own life. War deprives man of this fundamental right. It does this in many ways. I feel that it puts a man into a position that forces him to kill another person against his will.
 
 
 28
 A careful reading of the record here persuades us that the conclusion that Ferrand lacked sincerity was at least in part motivated by the reluctance of the Air Force to lose an officer who had received the obvious benefits of the Berry Plan. While this is understandable, it provides no "basis in fact" in view of the repeated findings of officers who had interviewed him, and most of those who reviewed his file, that he was entirely sincere. There is no basis in fact whatsoever for the finding that his objection to war was selective, and the statements relied upon evidencing his willingness to use force to restrain disturbed patients or his approval of police to protect society are legally unacceptable bases for the denial of C.O. status.
 
 
 29
 We therefore reverse and remand the case to the district court with instructions to issue the writ.