Gregory A. JOHNSON, Petitioner,

v.

COMMANDING OFFICER, USS CASIMIR PULASKI (SSBN 633) BLUE CREW, UNITED STATES NAVY, GROTON, CONNECTICUT, Respondent.

Civ. No. N–75–278.

United States District Court, D. Connecticut.

May 14, 1976.

M. Mitchell Morse, Jacobs, Jacobs & Grudberg, New Haven, Conn., for petitioner.

Marjorie Wilhelm, Asst U.S. Atty., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

Gregory A. Johnson, an enlistee and Electronics Technician third class in the United States Navy, seeks habeas release from military service on the ground that he is a conscientious objector. His initial petition

was filed on November 13, 1975, following notice from the Chief of Naval Personnel that his application for a discharge had been denied. At that time, the Court remanded petitioner's case to the Department of the Navy for further action and retained jurisdiction of the case.

On January 22, 1976, petitioner was informed that upon reconsideration by the Bureau of Naval Personnel, his application for a discharge had again been rejected. Petitioner then moved this Court for a hearing, alleging that the denial of his application had no basis in fact, was arbitrary and was based on improper standards. An evidentiary hearing was held on February 23, 1976, at which time a copy of the complete service record of petitioner was submitted to the Court. Comprehensive briefs have now been filed.

Petitioner joined the United States Naval Reserve on May 26, 1971. On August 5, 1971, he enlisted in the Regular Navy for four years in order to receive advanced electronics training. In May 1972, petitioner voluntarily extended his enlistment for two years in order to receive training in the nuclear field program. From the summer of 1971 until the fall of 1974, he received technical training at several Navy facilities: the Naval Training Center at Great Lakes, Illinois; the Nuclear Power School at Bainbridge, Maryland; and the Nuclear Power School Prototype, Schenectady, New York. It was during this time that petitioner began to develop the philosophical beliefs that compelled him to seek a release from the service.

In September 1973, petitioner, then enrolled in the Nuclear Power School, Bainbridge, believed that his convictions "were real and strong enough to take action upon." While at the Nuclear Power School Prototype, Schenectady, petitioner initially filed an application for a conscientious objector discharge, but withdrew it because of discouragement by his parents and superior officers. Finally, on November 5, 1974, six days after reporting on board the submarine U.S.S. CASIMIR PULASKI for sea

duty, he decided to pursue his quest for release and filed another formal discharge request. In the application the petitioner stated in part:

> I am to a point in my evolution though that its clear to me, that military forces, in existence to ultimately take conscious life, in order to maintain possession of material things, is wrong. Also taking part in any action that would cause conscious life to be taken, is wrong. It should, in my opinion, be evident that if any man were to see that these things are true beyond doubt, he could not perform his duties in, or remain a part of any military force, with a clear and unburdened conscience.

He explained that his repugnance to participate in military operations matured in Scotland when he observed "the United States submarines and contemplat[ed] their tremendous destructive potential."

Following prescribed procedures, 32 C.F.R. § 730, the petitioner was interviewed by two Navy chaplains, Commander John Dolaghan and Lieutenant Commander Aldon E. Purdham, and a Navy psychiatrist, Commander P. H. Farrier. Both chaplains concluded that petitioner was sincere in his beliefs; but neither recommended approval of his request, expressing reservation concerning the depth and clarity of his philosophical concepts. Dr. Farrier found no psychiatric disorders warranting treatment or disposition through medical channels. He determined that petitioner was "basically sincere in his beliefs but that those beliefs are still far from crystallized in his mind."

A hearing was held before the investigating officer assigned to the case, Lieutenant F. W. Krafft, on April 3, 1975. Petitioner testified, without representation by counsel, elaborating upon and explaining matters discussed in his application for discharge. Lieutenant Krafft issued a report of his investigation on April 18, 1975. He ascertained that, although petitioner "is sincere in the fact that he personally believes his present beliefs qualify him for conscien-

**13**

tious objector status," his beliefs are "shallow, poorly formulated, and inconsistent."[1] Lieutenant Krafft recommended disapproval of petitioner's request for classification as a conscientious objector.

To these reports petitioner's commanding officer, Commander R. L. Starck, added his recommendation that the application for discharge be denied. On the basis of his review of the investigative report and petitioner's rebuttal to that report of April 25, 1975, and on his interviews with petitioner since his assignment to the U.S.S. CASIMIR PULASKI, Commander Starck concluded that petitioner's idealistic concepts were not incompatible with continued military service and that "his present disenchantment with continued military service is based primarily on his belief that further service will limit what he perceives as his potential philosophic development rather than a deeply held, consistent objection to military service which is inherent in conscientious objection."

On June 4, 1975, the Chief of Naval Personnel denied by letter petitioner's request for discharge. He wrote that it was apparent from the record submitted for review that petitioner had failed to prove beyond a reasonable doubt that his beliefs were held with the strength and conviction of traditional religious beliefs or that he opposed wars and killing under all conditions. This decision erroneously placed on petitioner the burden of establishing his claim "beyond a reasonable doubt," see 32 C.F.R. § 730.18(n)(4); and therefore, as stated, this Court remanded the case for application of the proper "clear and convincing evidence" test.

On January 22, 1976, petitioner was again informed by letter from the Chief of Naval Personnel that his application for conscientious objector status was denied. On this

occasion, the stated reasons for the denial of petitioner's request were: (1) that he was not sincere in his asserted beliefs of conscientious objection; and (2) that it was not clear that he is opposed to war in any form. Petitioner now argues that there was no basis in fact to support these findings.

█ The parties agree that in order to qualify for a discharge from the armed forces as a conscientious objector, an applicant must establish that: (1) he is opposed to war in any form, *Gillette v. United States*, 401 U.S. 437, 91 S.Ct. 828, 28 L.Ed.2d 168 (1970); (2) his objection is grounded upon religious principles as enunciated by the Supreme Court in *Welsh v. United States*, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) and *United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); and (3) his beliefs are sincerely held. *Witmer v. United States*, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). See also *Clay v. United States*, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971); *Smith v. Laird*, 486 F.2d 307 (5 Cir. 1973); *Kemp v. Bradley*, 457 F.2d 627 (8 Cir. 1972). It is further undisputed that an adverse ruling on an application must be supported by a statement of reasons, *United States ex rel. Checkman v. Laird*, 469 F.2d 773, 780–81 (2 Cir. 1972), and that the scope of judicial review of the denial is limited to determining whether there exists in the record a "basis in fact" for the decision. See *Estep v. United States*, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); *Ferrand v. Seamans*, 488 F.2d 1386 (2 Cir. 1973); *United States ex rel. Donham v. Resor*, 436 F.2d 751 (2 Cir. 1971).

█ Applying these standards to the facts in the instant case compels the Court to conclude that the petitioner does not

---

1. Lieutenant Krafft based his conclusions on statements made by petitioner at the hearing indicating that: (1) he would take a conscious life if faced with a self-defense situation; (2) his primary objection with continued military duty is that he will not have sufficient time to practice his beliefs; (3) if refused a discharge

he would perform his duties as trained until the end of his enlistment; (4) his knowledge of texts which had stimulated his philosophical beliefs was cursory.

Petitioner was given an opportunity to and did rebut these findings in a letter to his commanding officer on April 25, 1975.

qualify for a discharge as a conscientious objector.[2]

First, all the officials who reviewed the petitioner's case were satisfied that he lacked the necessary conviction to warrant favorable consideration of his application for a discharge. Cf. *United States ex rel. Tobias v. Laird*, 413 F.2d 936 (4 Cir. 1969). Chaplains Dolaghan and Purdham both stated that petitioner's insight is limited and that his philosophical concepts lack clarity. Dr. Farrier wrote that petitioner's beliefs are not fully crystallized and do not interfere with the performance of his duties. Finally, Lieutenant Krafft found that petitioner's beliefs were shallow, poorly formulated, and inconsistent.

■ While the Court agrees "one does not have to be a St. Augustine or a Thomas Acquinas to qualify as a conscientious objector," *Kemp v. Bradley*, supra at 629; *Helwick v. Laird*, 438 F.2d 959, 964 (5 Cir. 1971), the petitioner must show that his beliefs are deeply held, that is, "held with the strength of traditional religious convictions." *Welsh v. United States*, supra 398 U.S. at 340, 90 S.Ct. at 1796. In evaluating the strength of petitioner's beliefs, naval personnel properly considered the timing of his application, his willingness to perform his duties in the Navy if his discharge is denied, his familiarity with the texts that stimulated his philosophical development, see *Maynard v. United States*, 409 F.2d 505, 506 (9 Cir. 1969); cf. *Peckat v. Lutz*, 451 F.2d 366 (4 Cir. 1971); and the clarity of his beliefs. Although petitioner has taken some action to conform his mode of life with his beliefs,[3] it seems evident that there is a basis in fact for the determination that his beliefs do not function as a religion in

his life. *Welsh v. United States*, supra 398 U.S. at 340, 90 S.Ct. 1792; see *United States v. Messinger*, 413 F.2d 927 (2 Cir. 1969); *United States ex rel. Donham v. Resor*, 318 F.Supp. 126, 133 (S.D.N.Y.1970), rev'd on other grounds, 436 F.2d 751, supra. Petitioner's statement to the investigating officers that he would do the job he was trained for until the end of his enlistment if his request for conscientious objector status was denied indicates that petitioner is not one of "those whose consciences, spurred by deeply held moral, ethical or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war." *Welsh v. United States*, supra, 398 U.S. at 344, 90 S.Ct. at 1798.

■ Second, in demonstrating his sincerity, petitioner's statements and demeanor may set forth a prima facie case for discharge; however, the military reviewing body may determine that petitioner is not to be believed and deny his application on that basis. *Lovallo v. Resor*, 443 F.2d 1262 (2 Cir. 1971). Where the applicant has stated his beliefs with apparent sincerity and no adverse demeanor evidence has been introduced, the Chief of Naval Personnel must predicate any finding of insincerity upon objective evidence affording a rational basis for his refusal to accept the validity of the applicant's claims. Id. at 1264; *Ferrand v. Seamans*, supra at 1389; accord, *Lobis v. Secretary of United States Air Force*, 519 F.2d 304 (1 Cir. 1975); see also 32 C.F.R. § 730.18(*o*)(3).

■ Despite the general agreement of all the reviewing officers that petitioner appeared to be a "sincere" young man, the

---

**2.** While the Court is unable to explain the shift in reasons for denying petitioner's application from the Chief of Naval Personnel's first letter to the second, the Court will not close its eyes to the earlier explanations afforded petitioner. Cf. *Checkman v. Laird*, 469 F.2d 773, 783 (2 Cir. 1973). It appears to the Court that the phrase, "not sincere in your asserted beliefs of conscientious objection," used by the Chief of Naval Personnel in his second letter encompasses his earlier reasons concerning the "strength and conviction" of petitioner's be-

liefs. With this outlook in mind, the Court will examine the full record to determine if there is a basis for the stated reasons. Id. at 787; *Bortree v. Resor*, 144 U.S.App.D.C. 300, 445 F.2d 776, 781 (1971); *United States ex rel. Donham v. Resor*, 318 F.Supp. 126, 133 (S.D.N. Y.1970), rev'd on other grounds, 436 F.2d 751 (2 Cir. 1971).

**3.** Petitioner alleges that he has refused to eat meat over a two-year period and has killed no living creature willfully in the past three years.

evidentiary materials disclose a factual basis adequate to sustain their conclusions that he fails to qualify as a conscientious objector under applicable standards. Petitioner contended that as early as September 1973, his "convictions were real and strong enough to take action upon;" and that, while in the Nuclear Power School, there was "a moral incompatability between [his] thoughts and the military service." Yet, petitioner persisted in availing himself of advanced nuclear training in the Navy for over one year, finally filing his application for conscientious objector status on November 5, 1974, six days after reporting for his first active submarine sea duty. While the timing of an application alone is not sufficient to sustain the Navy's denial of a claim of conscientious objection, *Ferrand v. Seamans*, supra at 1390; *Bortree v. Resor*, 144 U.S.App.D.C. 300, 445 F.2d 776, 784–85 (1971); cf. *Hopkins v. Schlesinger*, 515 F.2d 1224, 1226 (5 Cir. 1975), it certainly may be considered as a factor. *United States ex rel. Checkman v. Laird*, supra at 786, *Dix v. Resor*, 449 F.2d 317, 318 (2 Cir. 1971); *United States ex rel. Donham v. Resor*, supra, at 753; 32 C.F.R. § 730.18(n). Petitioner postponed his application while he continued to learn things he then claimed to find intolerable as a matter of conscience and conviction. Cf. *Foster v. Schlesinger*, 520 F.2d 751, 757 (2 Cir. 1975). As the court commented in *United States ex rel. Donham v. Resor*, supra, 318 F.Supp. at 132:

> [The Chief of Naval Personnel] was not irrational when [he] counted heavily against the petitioner the delay . . . in submitting his application. This is not the first case in which long delay, unim-

pressively explained, has been a factor adverse to claims like petitioner's. [citations omitted].

Although recognizing that petitioner appeared "sincere," Chaplain Dolaghan recommended denial of the application because of skepticism "based on the fact that he has taken Government pay for 39 months of valuable training, and has waited until now to apply as a conscientious objector."

The Chief of Naval Personnel was not less within the realm of allowable judgment when he weighed against petitioner his willingness to continue to perform his military duties if his discharge was denied. The conclusion that the application was motivated by petitioner's own desire for "more physical freedom and less mental restriction" to develop his philosophical beliefs, rather than any basic objection to participation in military organization, is supported by the record before the Court.

The other details supportive of the military decision are adequately stated in the opinion of the Chief of Naval Personnel.[4] Considering the decision upon the record as a whole, the Court finds that the denial of petitioner's application stands firmly upon the required basis in fact.

Accordingly, the petition for a writ of habeas corpus is denied.

---

4. With regard to the Chief of Naval Personnel's finding that petitioner has failed to demonstrate his opposition to war in any form, the Court notes that this finding is based on the inconsistency between petitioner's statement in his application that "No foreseeable circumstance would ever require me to take conscious life" and his statement, as paraphrased by the investigating officer, that "he might take conscious life if faced with a life or death self-defense situation." In his rebuttal letter of April 25, 1975, petitioner addresses this apparent inconsistency by explaining his view that conscious life exists in an order of importance; and thus, taking the life of an attacking animal with a lower consciousness to save the life of a human being is justified. The Court finds this explanation adequately clarifies the investigating officer's misunderstanding of petitioner's belief. See *United States v. Nagler*, 484 F.2d 38 (2 Cir. 1973). Furthermore, the Second Circuit in *Ferrand v. Seamans*, 488 F.2d 1386 (2 Cir. 1973), found that approval of the use of force in some limited circumstances, such as to restrain wrongdoing, does not preclude conscientious objection toward war. See also *United States v. Orr*, 474 F.2d 1365, 1369 (2 Cir. 1973).